[L. A. No. 15888.  In Bank.—May 26, 1937.]

HUGH J. BOYLE et al., Respondents, v. LAKEVIEW CREAMERY COMPANY (a Corporation) et al., Appellants.

S. Y. Allen for Appellants.

Lewis D. Collings and Amos Friedman for Respondents.

THE COURT.—This is a motion by respondents to dismiss the appeal in the above-entitled cause. Two other motions, hereinafter described, are before us.

Creditors of Lakeview Creamery Company, one of petitioners herein, brought a proceeding to have the company adjudged bankrupt, and a receiver was appointed to conduct the business. In October, 1932, Hugh J. Boyle, acting for Palo Verde Creamery, Inc., offered to purchase certain assets of Lakeview Creamery Company under an instalment contract. This offer was accepted, a bill of sale was given, and some payments were made. Thereafter Boyle and Palo Verde Creamery, Inc., brought suit in the Superior Court of Los Angeles County against Lakeview Creamery Company and its trustee, so called, for damages for alleged misrepresentations in connection with the contract of sale, and recovered a substantial judgment on August 12, 1935. Defendants gave notice of appeal, and the reporter prepared the transcript, but when the same was ready for settlement, Judge Burroughs, who tried the case, had died. The clerk's office notified counsel that the transcript would be presented to Judge Schmidt in department 33 of said superior court, for settlement. Plaintiffs objected to the settlement of the transcript, and their objections were sustained by Judge Schmidt on April 23, 1936.

Thereupon defendants brought two proceedings for the purpose of settling the transcript. The first was an application filed in this court for an order to show cause why the transcript should not be settled by this court. The second was a separate proceeding, *Lakeview Creamery Co.* v. *Superior Court* (*post*, p. 779 [68 Pac. (2d) 971]), seeking mandate to compel Judge Schmidt to settle the transcript in the main action, as well as the transcript of the lower court proceedings in settlement, which took place before Judge Schmidt on April 23, 1936. Two other motions were then made by plaintiffs, one to strike the clerk's transcript and reporter's transcript from the files, and the other to dismiss the appeal.

In support of the motion to dismiss the appeal, respondents have raised a point which, if sustained, conclusively disposes of all of the proceedings. It is their contention that appellants have no capacity to take the appeal or to seek the affirmative remedy of mandate, because in 1934 the corporate powers, rights and privileges of Lakeview Creamery Company were suspended for failure to pay its franchise taxes.

When this case was first before us, petitioner and appellant Sylvan Y. Allen represented to this court that he was a trustee appointed by the federal district court, and as such duly authorized to act on behalf of the corporation. We accordingly held that he could bring the appeal and seek *mandamus* in his representative capacity, and found it unnecessary to decide whether the corporation itself was deprived of these rights. A petition for rehearing was then filed by respondents, in which it was demonstrated that these representations of Sylvan Y. Allen were false, and that the title of trustee had been assumed by him without authority. It is true that in the complaint and findings the fiduciary character of Allen is loosely stated as "attorney and trustee", but this does not give him the title and powers of a strict trustee, nor the privileges of a trustee appointed by the federal district court. It was further represented by Allen in the prior hearing that the corporation was in bankruptcy and hence under the jurisdiction of the federal court. On rehearing it has been shown that the company was not, in fact, adjudicated a bankrupt; that by stipulation of creditors and the company, an attempt was made by the company to sell the assets apart from the bankruptcy proceedings, and thereafter, upon further stipulation a petition was filed to dismiss the bankruptcy proceedings, which petition was granted. The dismissal was to take effect on the consummation of the sale, but the effect of the court's order was to terminate the bankruptcy proceedings, leaving the company free to act as a corporation, through its own officers and agents, and without any representative appointed by and responsible to the federal court. These facts having been shown, the basis for the former opinion was eliminated, and we granted the petition for rehearing. We are now called upon to determine whether the corporation has itself the necessary power to bring the appeal.

Section 32 of the California Bank and Corporation Franchise Tax Act (Deering's Gen. Laws, Act 8488) provides that for failure to pay the taxes levied thereunder, "*the corporate powers, rights and privileges* of the delinquent taxpayer, if it be a domestice corporation, shall be *suspended* and shall be incapable of being exercised *for any purpose or in any manner except* for the purpose of amending the articles of incorporation to set forth a new name, and the officers, directors and stockholders or members of any such corporation may take

such action in their respective capacities as may be required by law in order to amend the articles of incorporation for such purpose . . . '' The section then provides criminal penalties for attempted exercise of such rights, privileges or powers.

The deprivation of corporate rights and privileges for failure to pay taxes is a familiar statutory provision, but the scope of the deprivation has not always been the same. Under earlier California statutes the powers were forfeited, the corporation was dissolved, and it came under the control of trustees, with the result that the corporation itself could not sue or be sued, and a summons served upon it or a judgment rendered against it was void. (See *Rossi* v. *Caire*, 186 Cal. 544, 549 [199 Pac. 1042]; *Ransome-Crummey Co.* v. *Superior Court*, 188 Cal. 393, 396 [205 Pac. 446].) Under our present statutes, the corporate powers of a domestic corporation are merely suspended, with certain exceptions. Thus, under section 3669c of the Political Code, it is provided that the corporate rights, privileges and powers of the delinquent corporation shall be incapable of being exercised for any purpose or in any manner, ''except to defend any action brought in any court against such corporation''. As already pointed out, section 32 of the Franchise Tax Act also merely suspends the corporate existence, but contains a different provision as to exceptions.

From a consideration of these statutes, the policy is clearly to prohibit the delinquent corporation from enjoying the ordinary privileges of a going concern, in order that some pressure will be brought to bear to force the payment of taxes. Under the Political Code, section 3669c, which covers certain state taxes other than those specified by the Franchise Tax Act, the penalty is not made too drastic; the corporation may not sue, but it may defend. The theory is, doubtless, that the result of failure to pay state taxes should not be to offer an opportunity for the filing and successful prosecution of fraudulent or groundless suits against a corporation which has assets subject to execution, and which, if prevented from defending actions, would be a prey to sharpers. But the exception covering the defense of actions is omitted from Franchise Tax Act, which prescribes the entire procedure of levy and collection of the taxes imposed thereunder, as well as the penalties for delinquency. The omission seems deliberate, and indicates the legislative intention that such corporations shall

be deprived of the power to defend suits. The statute expressly deprives the corporation of all "corporate powers, rights and privileges", subject to one exception, which is specifically set forth, the right to amend the articles to change the name. As the court declared in *Ransome-Crummey Co.* v. *Superior Court, supra,* 188 Cal. 397: "During the time its taxes were unpaid, petitioner was shorn of all rights save those expressly reserved by the statutes." The conclusion which we are forced to draw is that the appellant corporation has lost the right to defend the suit in question, and since it has no right to defend, it has no right to appeal from an adverse decision. (See, also, 6A Cal. Jur., sec. 364, p. 1469.)

■ It is suggested that the plaintiffs in the main action, by recognizing the authority of the Lakeview Creamery Company to convey title to its properties and to be sued on grounds arising from the conveyance, are estopped to question its power to defend against the action. We are unable to see any estoppel here. The statute provides criminal penalties for exercise of any corporate powers not permitted, and the defense of the action by the suspended corporation would appear to constitute a violation of the law. Appellants' theory is equivalent to saying that because the corporation may not defend, it cannot be sued, or if it can be sued, it must be permitted to defend. While this may be a more reasonable policy than that expressed in the statute, it is not what the statute provides.

■ Section 399 of the Civil Code has been cited in this connection. This provision deals with a corporation which is dissolved, or whose existence is forfeited, and permits it to continue in existence for the purpose of winding up its affairs, "prosecuting and defending actions by or against it", etc. This section has nothing to do with corporations which are penalized for failure to pay taxes, a subject covered by the other statutes mentioned. No penalty is contemplated by section 399, for the corporation may even bring actions, which no suspended corporation may do. The only purpose of section 399 is to stop further doing of business as a going concern, and limit corporate activities to winding up.

In concluding that the Lakeview Creamery Company has no power to defend or appeal in the above-entitled action, we are proceeding upon the assumption that the corporation was not, by reason of bankruptcy or receivership, under the jurisdic-

tion of the federal court. The record before us shows no such federal jurisdiction.

Whether, as a result of this decision, the assets of the suspended corporation are exposed to seizure by persons suing on groundless claims, is something which we cannot determine. The legislature has perhaps deemed the remedy of restoration of powers, by payment of back taxes, a sufficient protection against unfair litigation; and doubtless there are emergency measures, such as bankruptcy or receivership, which stockholders or other interested persons may be able to take to protect the corporation against serious loss.

The motion to dismiss the appeal is granted, and the appeal is dismissed. This disposes of the cause, and accordingly the motion for order to show cause why the reporter's transcript on appeal should not be settled, and the motion to strike the clerk's transcript and reporter's transcript from the files, are denied.

Rehearing denied.