## WHEALTON v. PINE GROVE NEVADA GOLD MINING CO.

No. 9075.

Circuit Court of Appeals, Ninth Circuit.

June 17, 1939.

John R. Ross, of Carson City, Nev., and Arthur A. Platz, of Reno, Nev., for appellant.

Wm. S. Boyle, of Reno, Nev., George Sanford, of Carson City, Nev., and George Montrose, of Gardnerville, Nev., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellee sued to quiet its title to mining claims in Lyon County, Nevada and to cancel a contract with defendant (appellant) relating to the claims. After a trial to the court without a jury appellee was adjudged to be the owner of the property, but relief

by way of cancellation was denied. The defendant appealed.

The suit involved twelve lode claims, of which nine are patented and three unpatented. Appellant complains of the decree only in respect of the unpatented ground, title to which he asserts is in himself. All the claims originally belonged to two individuals who transferred them, about the year 1902, to the Pine Grove Gold Mining Company, a corporation organized under the laws of Nevada. This concern will be referred to as the Nevada corporation. In 1910, apparently as a matter of convenience, appellee was organized under the laws of California and the claims were transferred to it by its predecessor, the Nevada corporation. It will be noted that the two corporations had almost identical names, the only difference being that appellee's name includes the word "Nevada".

After the conveyance of the property the Nevada corporation was abandoned and its charter forfeited. However, its seal appears to have remained in appellee's office, and for reasons not difficult to understand some confusion in corporate nomenclature arose in subsequent dealings with the property. For example, during the period from 1932 to 1936 appellee took advantage of the successive acts of Congress providing for the suspension of the requirement of annual labor on unpatented mining claims. In the recorded declarations of the intention of the company to hold the claims on which labor had not been performed the defunct Nevada corporation was named as the owner. The mistake in the designation of appellee was carried over into contracts entered into with appellant.

In July, 1935 an agreement in the nature of a lease and option to purchase the group was made with appellant in the name of the Nevada corporation, and on July 3, 1936 a new contract in modified form was entered into. In these agreements, in which time was made of the essence, appellant undertook to pay taxes and to protect the ground against adverse claims. He was placed in possession at the time of the first contract, made certain payments on the agreed purchase price, and did a substantial amount of work upon and about the property—mainly on the un-

patented claims. On the latter he built a quartz mill. His dealings concerning the property were all with one Metson, who was appellee's president and sole stockholder and who had signed both contracts in his capacity as president.

Because of appellee's failure to pay license fees exacted under the California law its corporate powers had become suspended, and it was not reinstated until October, 1936. It is to be gathered that appellant learned of the suspension and thought profitable use might be made of it and of the fact that his contract, on its face, was with the defunct Nevada corporation rather than with the real owner. In a patent attempt to preempt the name and thus forestall a revivor of appellee under the statute, certain individuals, allied with appellant, on August 28, 1936 filed in California articles of incorporation of the Pine Grove Nevada Gold Mining Company.[1] On August 17, 1936 one Powell, acting, as the court found, in collusion with appellant, located the three unpatented claims in the names of himself and another. About six weeks later Powell quitclaimed the relocated ground to appellant in consideration of the latter's agreement to pay $500, on the condition, however, that the sum was not to be paid unless appellant should succeed in quieting his title to the ground in a suit for that purpose about to be brought against appellee. Meanwhile, on August 31, 1936, appellant wrote appellee's president saying that he had been advised that the Pine Grove Gold Mining Company had no title to the property, declaring that he had been greatly damaged thereby, and that he would continue under his contract upon receipt of evidence that the Pine Grove Gold Mining Company owned the property. In response to this letter appellee wrote appellant, stating that because of the latter's failure to make payments due under the existing contract the same was at an end. The payment in default was one due September 1, 1936 in the amount of $500.

On September 30, 1936 appellant brought suit in the Nevada state court to quiet title to the relocated claims which had been conveyed to him by the locator. The suit was dismissed on appellee's motion after it had been removed to the United States court. Appellee thereupon brought the present action. Appellant an-

[1] For reasons not made apparent in the record the attempt was unavailing, as appellee was later granted a certificate of revivor.

swered and interposed a cross complaint, denying that appellee had title to the unpatented claims and asserting title thereto in himself. As has been said, the trial court held in favor of appellee on the issue of ownership but not on the issue of the abrogation of appellant's contract.

The court justly thought that appellee was under the duty of correcting the error in nomenclature in the option contract, and having failed to offer satisfaction to appellant in this respect appellee was not entitled to declare a forfeiture as of the time it had undertaken to do so. For this reason the court decreed that the contract remained effective. Appellant moved for a modification of the decree in order more clearly to define his obligations under the agreement. In partial compliance with the motion the court ordered an amendment so as to grant appellant a reasonable time to make good existing defaults. Appellant does not complain of the terms of the decree in this respect, but asserts only that he is entitled to a decree adjudging him to be the owner of the unpatented claims, or at least that the court was in error in holding appellee to be the owner of them. He urges that appellee lacks capacity to sue, and that the suit should have been brought as one at law rather than in equity. Neither contention was made below and neither is open to consideration here. Even though timely urged the points are devoid of merit.

When this suit was brought appellee was in good standing in the state of its origin. The fact that its corporate powers had theretofore been in suspension did not, as appellant seems to believe, operate to deprive it of its property or take away its right to protect its interests through revivor of its corporate franchise. Boyle et al. v. Lakeview Creamery Co., 9 Cal.2d 16, 68 P.2d 968. Its unpatented claims were not open to location on the date Powell essayed to locate them. At that time appellant was in possession and was prosecuting work upon the claims as appellee's lessee. Despite prior failures to perform annual labor, it is elementary that the owner's resumption of work on his ground forestalls location of it by another. And in no event was appellant entitled, either directly or in collusion with others, to take advantage of his own neglect or the neglect of the owner who had put him in possession.

Affirmed.