[Civ. No. 9000. Third Dist. Nov. 7, 1957.]

THE ALHAMBRA-SHUMWAY MINES, INC. (a Corporation) et al., Appellants, v. ALHAMBRA GOLD MINE CORPORATION (a Corporation), Respondent.

Rowell, Lamberson & Thomas, Milo E. Rowell, Richard Z. Lamberson and Breckinridge Thomas for Appellants.

Entenza & Gramer, Jerome Weber and S. E. Gramer for Respondent.

SCHOTTKY, J.—Plaintiff The Alhambra-Shumway Mines, Inc., a California corporation, on February 17, 1951, commenced an action against defendant, a Nevada corporation, to declare cancelled a lease of mining property and equipment known as "The Alhambra Mine." By an amended complaint filed on February 17, 1953, plaintiff B. F. Parsons, as a stockholder, and in behalf of all the stockholders of the plaintiff corporation and of the corporation itself, joined as a plaintiff in the action. Plaintiffs have appealed from a judgment that plaintiffs are not entitled to any relief upon their complaint to cancel the lease and that the lease is valid and subsisting.

Appellant corporation had operated and mined the Alhambra Mine for several years until it closed in 1942 because of the wartime order of the Federal government to divert manpower to other industries more necessary for the war effort. During the war years no shareholders' meetings were held.

About January 1, 1947, the then officers and directors of appellant corporation executed a lease of the mine and its equipment to the assignor of the respondent corporation for 10 years. About March 31, 1948, the lease was amended to extend the term to 20 years from January 1, 1947, and to recite an assignment to respondent corporation. In its findings of fact the trial court found that the mining property and equipment covered by the lease constituted substantially all of the assets of appellant corporation, and that the officers and directors did not advise the shareholders of the lease until May, 1950. However, the trial court concluded that by reason of a discovery in the mine in August, 1949, and the attendant newspaper publicity, an undetermined number of the shareholders obtained knowledge of the lease. As soon as the existence of the lease was officially reported to the shareholders, attempts were commenced to have a shareholders' meeting at which the lease could be discussed, approved or rejected. The then directors and officers of appellant corporation, who were the ones that executed the leases, attempted to and were successful for a time in preventing a vote upon the lease; however, on July 12, 1950, a shareholders' meeting finally occurred at which a contested election of directors resulted. Following the contested election an action was filed which eventually resulted in a court supervised election about January 17, 1951, and a new board of directors. The new board called a meeting of shareholders on February 8, 1951, at which the lease was expressly disapproved. Notice of the results of this meeting was given to respondent on February 10, 1951, and following the claim by respondent that the lease was valid, this action was filed on February 17, 1951, by appellant corporation.

By an amended complaint filed February 17, 1953, appellant B. F. Parsons, as a shareholder and in behalf of all of the shareholders of the corporation and of the corporation itself, joined as a plaintiff in the action.

In its original complaint appellant corporation offered to cancel the lease on such terms and conditions as the court might deem just and reasonable. In succeeding amended com-

plaints the offer was repeated, including the complaint in which appellant Parsons joined. The basis of the action is that the real and personal property leased constituted substantially all of the assets of appellant corporation and, therefore, required the approval of the shareholders pursuant to sections 3901 and 3902 of the Corporations Code.

The court found: (1) That both appellants had been guilty of laches; (2) that both appellants had failed to comply with Civil Code, section 1691 relating to restitution; (3) that appellant corporation was estopped but that appellant Parsons was not estopped to prosecute the action; (4) that appellant corporation was barred by the statute of limitations but that appellant Parsons was not barred by the statute of limitations; (5) that both appellants had legal capacity to sue; (6) that the lease in question is within the ambit of Corporations Code, section 3901; (7) that the amended complaint does not state facts sufficient to constitute a cause of action insofar as appellant corporation is concerned but does state facts sufficient to constitute a cause of action insofar as appellant Parsons is concerned.

One further fact upon which the trial court failed to make a finding involves the corporate status of respondent. During the course of the trial it was discovered that respondent, a foreign corporation, had not paid its franchise taxes for a number of years. Appellant thereupon moved to strike all pleadings and evidence of respondent and to enter the default of respondent upon the ground that as a foreign corporation it had forfeited its right to transact business in California, including the right to defend this action. This motion was denied by the trial court upon the submission of the case. The parties stipulated that a certificate of suspension or forfeiture as of August 1, 1950, from the Secretary of State might be received in evidence. (Plaintiffs' Exhibit 19.) Judgment in favor of respondent was entered on August 23, 1955. On September 19, 1955, appellant filed a notice of intention to move for a new trial and also filed a corrected certificate of the Secretary of State reciting that the rights of respondent corporation to transact intrastate business were forfeited on August 1, 1950, and had not been reinstated. At the hearing of the motion for a new trial on October 28, 1955, respondent produced a certificate of revivor, showing that respondent's right to do intrastate business in California was revived and restored to full force and effect on October 28, 1955. The motion for a new trial was denied and this appeal followed.

■ Appellants contend first that a corporation suspended or which has forfeited its rights under Revenue and Taxation Code, section 23301, may not defend an action against it to declare a lease invalid. In the recent case of *Reed* v. *Norman,* 48 Cal.2d 338, at page 343 [309 P.2d 809], the court said:

"On the issue of suspension of the corporation for failure to pay franchise tax, it is true that under the corporation law (Rev. & Tax. Code, §§ 23301, 23302, *supra*) the corporation may not prosecute or defend an action, nor appeal from an adverse judgment in an action while its corporate rights are suspended for failure to pay taxes (*Boyle* v. *Lakeview Creamery Co.,* 9 Cal.2d 16 [68 P.2d 968] ; *Ocean Park etc. Co.* v. *Pacific Auto Park Co.,* 37 Cal.App.2d 158 [98 P.2d 1068] ; *Baker* v. *Ferrel,* 78 Cal.App.2d 578 [177 P.2d 973] ; *Fidelity Metals Corp.* v. *Risley,* 77 Cal.App.2d 377 [175 P.2d 592] ), . . .''

Respondent in reply relies on section 5700 of the Corporations Code which provides:

"Except as provided in this section, the corporate rights, privileges and powers of every corporation, which have been suspended for nonpayment of taxes and penalties under former sections 3664a, 3664c and 3664d of the Political Code as those sections existed prior to September 1, 1935, are incapable of being exercised for any purpose or in any manner until they are restored. The corporate rights, privileges, and powers may be exercised to defend any action brought in any court against the corporation."

However, as pointed out by appellants, the statutory history of section 5700 shows that this section is based upon the Political Code, section 3669c as it existed prior to June 12, 1939. In *Boyle* v. *Lakeview Creamery,* 9 Cal.2d 16 [68 P.2d 968], the distinction between the penalties under section 3669c and penalties for failure to pay taxes levied under the Franchise Tax Act are clearly set forth. There, the court said, at page 19:

"From a consideration of these statutes, the policy is clearly to prohibit the delinquent corporation from enjoying the ordinary privileges of a going concern, in order that some pressure will be brought to bear to force the payment of taxes. Under the Political Code, section 3669c, which covers certain state taxes other than those specified in the Franchise Tax Act, the penalty is not too drastic; the corporation may not sue, but it may defend. The theory is, doubtless, that the

result of failure to pay state taxes should not be to offer an opportunity for the filing and successful prosecution of fraudulent or groundless suits against a corporation which has assets subject to execution, and which, if prevented from defending actions, would be a prey to sharpers. But the exception covering the defense of actions is omitted from the Franchise Tax Act, which prescribes the entire procedure of levy and collection of the taxes imposed thereunder, as well as the penalties for delinquency. The omission seems deliberate, and indicates the legislative intention that such corporations shall be deprived of the power to defend suits. The statute expressly deprives the corporation of all 'corporate powers, rights and privileges,' subject to one exception, which is specifically set forth, the right to amend the articles to change the name. As the court declared in *Ransome-Crummey Co.* v. *Superior Court, supra,* 188 Cal. 397 [205 P. 446] : 'During the time its taxes were unpaid, petitioner was shorn of all rights save those expressly reserved by the statutes.' The conclusion which we are forced to draw is that the appellant corporation has lost the right to defend the suit in question, and since it has no right to defend, it has no right to appeal from an adverse decision.''

To the same effect are *Graceland* v. *Peebler,* 50 Cal.App.2d 545 [123 P.2d 527], and 2 Witkin, California Procedure, 1013, as well as the cases cited in *Reed* v. *Norman, supra.* Although the Boyle case, *supra,* concerned a domestic rather than a foreign corporation, since a domestic corporation is merely suspended while a foreign corporation forfeits, the law applicable to the lesser situation of suspension should also apply to the more drastic penalty of forfeiture.

In reply to respondent's contention that the objection should have been in the pleadings, appellants state that in the cited cases the issue was presented to the court after the commencement of proceedings by motion to dismiss just as it was in the present case, and this appears to be an appropriate method in which to present the matter at any time it is brought to the attention of the court.

In view of the provisions of section 23301 of the Revenue and Taxation Code, and the authorities hereinbefore cited, we believe that there is no escape from the conclusion that respondent corporation had no right to defend in the instant action, or even to participate therein during the time that its corporate rights were suspended. Therefore the trial

court should have granted appellants' motion to strike the pleadings of respondent and certainly the trial court had no right to consider the defenses of the statute of limitations, laches, and estoppel which respondent set up in its answers. Section 23301 expressly deprived respondent corporation of all "corporate powers, rights and privileges," and the right to defend against an action is included in such powers, rights and privileges. It is true that in the instant case the point was not raised by appellants until the final day of the trial and long after the action was commenced, but that does not aid respondent because the fact remains that the powers, rights and privileges of respondent corporation were not revived and restored before the entry of the judgment appealed from.

The record shows without dispute that the lease in controversy was a lease of substantially all of the assets of appellant corporation and the court found that it was within the ambit of section 3901 of the Corporations Code. The record also shows without dispute that the lease was never approved by the "vote or written consent" of a majority of the shareholders, as required by the section. The respondent corporation having forfeited its right to defend against the action or to file any pleadings therein, the court erred in considering the special defenses of laches, estoppel and the statute of limitations raised by respondent. Since the judgment was based upon the court's findings in favor of respondent upon said special defenses, the judgment in favor of respondent corporation is clearly without support and must be reversed.

The judgment is reversed.

Van Dyke, P. J., and Peek, J., concurred.

A petition for a rehearing was denied November 27, 1957, and respondent's petition for a hearing by the Supreme Court was denied December 30, 1957. Carter, J., was of the opinion that the petition should be granted.