[S.F. No. 22907. In Bank. Nov. 29, 1972.]

PEACOCK HILL ASSOCIATION, Plaintiff and Respondent, v. PEACOCK LAGOON CONSTRUCTION COMPANY, Defendant and Appellant.

**COUNSEL**

Burd, Hunt & Friedman, Peter Hunt and Michael J. Flynn for Defendant and Appellant.

Kerner, Colangelo & Imlay, James D. Hobbs and Francis Kerner for Plaintiff and Respondent.

**OPINION**

**PETERS, J.**—Peacock Hill Association, a nonprofit corporation managing the common areas and affairs of a condominium project moves to ·dismiss

the appeal from an adverse judgment by Peacock Lagoon Construction Co. (hereinafter referred to as "Construction"), the developer of the project.

The motion to dismiss is made on the ground that Construction's corporate powers had been suspended pursuant to section 23301 of the Revenue and Taxation Code.[1]

Construction has filed a declaration in opposition to the motion to dismiss accompanied by a receipt from the Franchise Tax Board indicating that it had recently filed its delinquent return, paid the penalty assessment, and applied for a certificate of revivor pursuant to section 23305 of the Revenue and Taxation Code. Subsequently, Construction filed a certificate of revivor issued by the Franchise Tax Board showing that Construction had been reinstated and revived to good standing.

In a number of situations the revival of corporate powers by the payment of delinquent taxes has been held to validate otherwise invalid prior action. (*Traub Co.* v. *Coffee Break Service, Inc.,* 66 Cal.2d 368, 370 [57 Cal.Rptr. 846, 425 P.2d 790]; *Diverco Constructors, Inc.* v. *Wilstein,* 4 Cal.App.3d 6, 12 [85 Cal.Rptr. 851]; *A. E. Cook Co.* v. *K S Racing Enterprises, Inc.,* 274 Cal.App.2d 499, 500 [79 Cal.Rptr. 123]; *Duncan* v. *Sunset Agricultural Minerals,* 273 Cal.App.2d 489, 493 [78 Cal.Rptr. 339].) ▆ In all of the above cited cases it was held that the purpose of section 23301 of the Revenue and Taxation Code is to put pressure on the delinquent corporation to pay its taxes, and that purpose is satisfied by a rule which views a corporation's tax delinquencies, after correction, as mere irregularities. This reasoning is in accord with our language in *Boyle* v. *Lakeview Creamery Co.,* 9 Cal.2d 16 [68 P.2d 968], declaring the legislative policy of Revenue and Taxation Code provisions imposing sanctions for failure to pay taxes to be "clearly to prohibit the delinquent corporation from enjoying the ordinary privileges of a going concern, in order that some pressure will be brought to bear to force the payment of taxes." (At p. 19.) There is little purpose in imposing additional penalties after the taxes have been paid.

*Traub Co.* v. *Coffee Break Service, Inc., supra,* 66 Cal.2d 368, 370, involved an appeal by the cross-defendants from an order denying their motion to vacate and set aside a judgment which had already become final

---

[1] Section 23301 of the Revenue and Taxation Code provides that the corporate powers, rights, and privileges of a domestic corporation shall be suspended if the corporation fails to pay its taxes or any penalty or interest which may be owing.

Section 25962.1 provides that any person who attempts to exercise the powers, rights, and privileges of a suspended corporation is punishable by a fine and/or imprisonment.

▆

in favor of cross-complainant, a California corporation. The basis of the motion was that before entry of the judgment and continuously to the time of the motion the corporate powers of cross-complainant had been suspended under section 23301 for failure to pay certain taxes levied pursuant to the Bank and Corporation Tax Law. This court concluded that the trial court was correct in its view that a final judgment is immune from the collateral attack attempted.

In *Traub* we cited with approval several Court of Appeal decisions in which the corporate plaintiff was allowed to maintain a lawsuit even though it had been suspended at the time it filed its complaint. In each case, the corporation had secured reinstatement prior to the date set for trial, but after the defendant had brought the suspension to the attention of the trial court. The appellate courts reasoned that the plea of lack of capacity of a corporation because of its suspension for failure to pay taxes, is a plea in abatement which is not favored in law and must be supported by the facts at the time of the plea. In each case it was held that revival of the corporate powers before trial was sufficient to permit the corporation to maintain its action.[2] (*Pacific Atlantic Wine, Inc.* v. *Duccini,* 111 Cal.App.2d 957, 967 [245 P.2d 622]; *Hall* v. *Citizens Nat. Tr. & Sav. Bank,* 53 Cal.App.2d 625, 630 [128 P.2d 545]; *Maryland C. Co.* v. *Superior Court,* 91 Cal.App. 356, 361 [267 P. 169].)

*Traub* has subsequently been cited as authority in at least three recent Court of Appeal decisions which extended the *Traub* rule to other situations.

*A. E. Cook Co.* v. *K S Racing Enterprises, Inc., supra,* 274 Cal.App.2d 499, 500, presented the question of whether a corporation was entitled to the benefit of an attachment where it filed suit and obtained a writ of attachment at a time its corporate powers were suspended for nonpayment of taxes, but where it thereafter revived its powers by the payment of its back taxes prior to the filing of a motion to discharge the attachment. The court held that "[o]n revivor of its corporate powers a corporation may continue an action commenced during the period of suspension and not previously dismissed, even though the opposing party pleaded the suspension prior to the revivor. . . . [¶] The same logic which sustains actions commenced prior to revivor of corporate powers sustains the validity of provisional remedies ancillary to such actions. If a corporation may shore

---

[2]We also cited *Schwartz* v. *Magyar House, Inc.,* 168 Cal.App.2d 182 [335 P.2d 487], which held that the trial court could, even on its own motion, grant a continuance in order to permit the corporation to secure a reinstatement. (*Traub Co.* v. *Coffee Break Service, Inc., supra,* 66 Cal.2d at p. 370, fn. 3.)

up its entire cause of action by reviving its corporate powers and thereby validate its complaint, it seems appropriate to permit it to do the same thing on behalf of a provisional remedy wholly dependent on the main cause of action, provided, of course, that in the meantime substantive defenses have not accrued nor third party rights intervened. . . . The effect of such revivor and validation is comparable to that of an amendment to an irregularly issued attachment, which amendment by statute may relate back to the time of issue and cure defects and omissions in the original attachment."

In *Duncan v. Sunset Agricultural Minerals, supra,* 273 Cal.App.2d 489 493, the court held that as long as the certificate of revivor is filed prior to the entry of judgment, it is an abuse of discretion not to determine the case on its merits.

The most recent case to cite the *Traub* decision is *Diverco Constructors, Inc. v. Wilstein, supra,* 4 Cal.App.3d 6, 12, where the plaintiff corporation was suspended during the pendency of a lawsuit. Just before expiration of the five-year period within which an action must be brought to trial (Code Civ. Proc., § 583), plaintiff filed a motion requesting an early trial setting conference. The cause was dismissed by the trial court when the defendant notified the court that plaintiff's corporate powers had been suspended at the time the motion was made, even though plaintiff was reinstated before the suspension was brought to the court's attention. The trial court reasoned that all action taken by the corporation while it was suspended was null and void and any procedural steps undertaken while it was suspended would be inoperative unless undertaken anew after reinstatement. In reversing, the Court of Appeal held that since "appellant's corporate powers had been revived two days before respondents made their motion to dismiss, the motion was groundless. The prior activities of appellant corporation, in undertaking discovery and appearing on and filing motions, were not a nullity. Its legal rights were merely suspended and were revived, . . ." (At p. 12.) The court made it quite clear that suspension of corporate powers is a defense which may be asserted so long as the party-corporation is under disability, and that upon revival of these powers, the corporation may proceed with the prosecution or defense of an action.

The foregoing authorities make clear that as to matters occurring prior to judgment the revival of corporate powers has the effect of validating the earlier acts and permitting the corporation to proceed with the action. We are satisfied that the same rule should ordinarily apply with respect to matters occurring subsequent to judgment. *Ransome-Crummey Co. v. Superior Court,* 188 Cal. 393, 398 [205 P. 446], relied upon by

the Peacock Hill Association, was limited in *Traub* to "the special jurisdictional problems incident to a motion for new trial" (66 Cal.2d at p. 372), and we see no valid reason to extend the rule enunciated in that case to other post-judgment procedures.

■ In the instant case, the corporate powers of Construction have been revived by the payment of the taxes, and it may proceed with its appeal.

The motion to dismiss the appeal is denied and the matter transferred to the Court of Appeal, First District.

Wright, C. J., Tobriner, J., Sullivan, J., and Burke, J., concurred.

**MOSK, J.**—I dissent. The majority concede that "[T]he purpose of section 23301 of the Revenue and Taxation Code is to put pressure on the delinquent corporation to pay its taxes . . . ." (*Ante,* p. 371.) Yet that purpose is frustrated by permitting a delinquent corporation, merely through tardy payment of taxes, to validate all of the actions taken during its period of suspension. Under that concept the stick becomes a carrot; all incentive to avoid punitive disabilities dissolves. Upon exposure of its delinquency the corporation suffers little more than fleeting embarrassment, and, indeed, it is then rewarded by authentication of all its previous illegal acts.

In the present case, for example, Construction's powers had been suspended prior to trial and remained in that status until after judgment and the filing of the notice of appeal. It was not until plaintiff brought the suspension to the attention of the appellate court by its motion to dismiss the appeal that Construction at long last paid its delinquent taxes. Presumably, if plaintiff had not moved to dismiss Construction's appeal, the latter simply could have continued in its suspended status until the appeal had been decided and for an indefinite period thereafter, depending upon whether or not it was advantageous to obtain revival of its corporate powers. How the majority's holding validating the revival of all acts of this suspended corporation taken after judgment will in the future impose any significant "pressure" upon a corporation to pay its franchise taxes is difficult to comprehend.

Historically a distinction has been drawn between the failure of a corporation to pay ordinary taxes to which all taxpayers are subject and for which the penalties are no more severe than those imposed on other taxpayers, and its failure to pay the franchise tax upon which its very existence as a corporate entity depends.

Under early California statutes, upon failure to pay taxes the powers of a delinquent corporation were forfeited, the corporation was dissolved, and it came under the control of trustees, with the result that the corporation itself could not sue or be sued, and a summons served upon it or a judgment rendered against it was void. As described in *Rossi* v. *Caire* (1921) 186 Cal. 544, 549 [199 P. 1042]: "The status of a corporation whose charter is forfeited under the license tax act referred to is well settled by decisions of this court. The penalty imposed by the act for non-payment of the license tax prescribed was exceedingly severe and the consequence doubtless often disastrous. But in view of our constitutional provisions the absolute power of the state over corporation charters was such, and the intention of the act to accomplish this end was so clearly and unambiguously shown thereby, that there could not be any well-founded difference of opinion as to the result. The Governor's proclamation having been duly made and the corporation having failed to pay within the specified time thereafter, the corporation simply ceased to exist, just exactly as in the case of a forfeiture for cause by judicial decree, without any existing provision of law for rehabilitation as a corporation. It was not a case simply of suspended animation, as under the present license tax law, but one of absolute death . . . ."

At the time *Rossi* was decided section 3669c of the Political Code provided that the corporate rights, privileges and powers of a corporation which failed to pay its license tax shall be incapable of being exercised for any purpose or in any manner except to "defend any action brought in any court against such corporation." Thereafter, when the franchise tax law was enacted (Stats. 1929, ch. 13, § 32) and with each subsequent change in the statute, the Legislature pointedly omitted the exception "to defend any action brought in any court against such corporation," thus clearly evidencing an intent to permit one to sue a suspended corporation but to deny the corporation standing to defend such action. The exception does not appear in the Bank and Corporation Tax Law today.[1] The legislative intent is further demonstrated by section 23301 of the Revenue and Taxation Code which provides the one, and only one, right permitted a sus-

---

[1] Yet the Legislature is not oblivious of the issue. It has pointedly permitted moribund corporations to defend litigation in other circumstances. Corporations Code section 5400 provides that a corporation "dissolved by the expiration of its term of existence" may continue "prosecuting and defending actions by or against it." (Also see Corp. Code, § 5401.) The Legislature has also provided that corporations suspended for nonpayment of taxes under certain sections of the old Political Code —subsequently repealed—could be restored to all corporate rights and powers upon payment of taxes and penalties due *under said sections.* (Corp. Code, § 5701; also see Corp. Code. §§ 5706, 5709.)

pended corporation: the amendment of its articles of incorporation to adopt a new name.

Section 23305a of the Revenue and Taxation Code permits the issuance of a certificate of revivor and then provides that upon issuance of the certificate the taxpayer shall become reinstated, "but such reinstatement shall be without prejudice to any action, defense or right which has accrued by reason of the original suspension or forfeiture." Obviously no rights could have accrued *to* the suspended corporation during the period of original suspension—it could not lawfully function for any purpose—so that the clause necessarily refers to rights accruing *against* the suspended corporation. Use of the conjunction "but" rather than "and" in the code section supports that construction.

Thus plaintiff was entitled to proceed against the delinquent corporation and to obtain a judgment. But since the defendant had failed to pay its franchise tax, upon which its very existence as an entity sanctioned by the State of California depends, the defendant corporation could not appropriately defend the action, and, a fortiori, it could not take the affirmative action contemplated in an appeal.

This precise problem arose in *Boyle* v. *Lakeview Creamery Co.* (1937) 9 Cal.2d 16 [68 P.2d 968], which I deem to retain continued vitality. There this unanimous court said (at p. 19): "From a consideration of these statutes, the policy is clearly to prohibit the delinquent corporation from enjoying the ordinary privileges of a going concern, in order that some pressure will be brought to bear to force the payment of taxes. . . . [T]he exception covering the defense of actions [in former Political Code section 3669c] is omitted from Franchise Tax Act, which prescribes the entire procedure of levy and collection of the taxes imposed thereunder, as well as the penalties for delinquency. The omission seems deliberate, and indicates the legislative intention that such corporations shall be deprived of the power to defend suits. The statute expressly deprives the corporation of all 'corporate powers, rights and privileges,' subject to one exception, which is specifically set forth, the right to amend the articles to change the name. As the court declared in *Ransome-Crummey Co.* v. *Superior Court, supra,* 188 Cal. 397 [205 P. 446]: 'During the time its taxes were unpaid, petitioner was shorn of all rights save those expressly reserved by the statutes.' The conclusion which we are forced to draw is that the appellant corporation has lost the right to defend the suit in question, and since it has no right to defend, it has no right to appeal from an adverse decision." (Cf. *Sunset Oil Co.* v. *Marshall Oil Co.* (1940) 16 Cal.2d 651 [107 P.2d 393].)

I concede there is language in a number of Court of Appeal opinions supporting the majority (see, e.g., *Diverco Constructors, Inc.* v. *Wilstein* (1970) 4 Cal.App.3d 6; 12 [85 Cal.Rptr. 851]), but the only opinion of this court frequently cited for their proposition is *Traub Co.* v. *Coffee Break Service, Inc.* (1967) 66 Cal.2d 368 [57 Cal.Rptr. 846, 425 P.2d 790]. I do not interpret *Traub* as broadly as do my colleagues. The issue there was simply the propriety of a collateral attack upon a final judgment, and we held the final judgment to be immune from tardy assaults made subsequent to entry of judgment. It is one thing to determine, as in *Traub,* that a judgment in favor of a suspended corporation is not subject to collateral attack and quite another to hold, as do the majority here, that all acts of a suspended corporation, even those taken after judgment, are validated by revival.

An authoritative Court of Appeal opinion is *Alhambra-Shumway Mines, Inc.* v. *Alhambra Gold Mine Corp.* (1957) 155 Cal.App.2d 46 [317 P.2d 649], in which the court said at pages 50-51: "In view of the provisions of section 23301 of the Revenue and Taxation Code, and the authorities hereinbefore cited, we believe that there is no escape from the conclusion that respondent corporation has no right to defend in the instant action, or even to participate therein during the time that its corporate rights were suspended. Therefore the trial court should have granted appellants' motion to strike the pleadings of respondent and certainly the trial court had no right to consider the defenses of the statute of limitations, laches, and estoppel which respondent set up in its answers. Section 23301 expressly deprived respondent corporation of all 'corporate powers, rights and privileges,' and the right to defend against an action is included in such powers, rights and privileges. It is true that in the instant case the point was not raised by appellants until the final day of the trial and long after the action was commenced, but that does not aid respondent because the fact remains that the powers, rights and privileges of respondent corporation were not revived and restored before the entry of the judgment appealed from."

In addition to the foregoing rationale, I agree with the Court of Appeal conclusion in this case that "the revival of the corporate rights, powers and privileges on October 22, 1970, did not have the effect of validating the acts attempted during the period of suspension since the revival is not made retroactive by statute." (Molinari, P. J., in *Peacock Hill Assn.* v. *Peacock Lagoon Construction Co.* (hg. granted, May 18, 1972).) Nor is the failure of plaintiff to raise the issue earlier of any significance, since "jurisdiction cannot be conferred on an appellate court by

estoppel or waiver." (*Id.*) In sum, declared Justice Molinari, "the situation here is the result of appellant's own doing, i.e., the nonpayment of taxes which placed it in the impotent status of suspended animation" (*id.*).

I would order the appeal dismissed.

McComb, J., concurred.