Filed 5/4/23  Tri Citrus v. Euclid GP Partners CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| TRI CITRUS, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> EUCLID GP PARTNERS, LLC, <br><br> Defendant and Respondent. | B319042 <br><br> (Los Angeles County Super. Ct. No. 21STCV22517) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Holly J. Fujie, Judge.  Affirmed.

Jassy Vick Carolan, William T. Um, and Jean-Paul Jassy for Plaintiff and Appellant.

Baker Manock & Jensen, Joseph M. Marchini, and Michael J. Fletcher for Defendant and Respondent.

Tri Citrus, Inc. (Tri Citrus), a limited partner in a business venture, sued the venture's general partner for failing to provide yearly accountings of the partnership's affairs. The general partner demurred to the complaint because Tri Citrus was a suspended corporation and accordingly lacked capacity to prosecute its lawsuit. The trial court sustained the demurrer, and when Tri Citrus agreed it could not revive its good corporate standing and amend its pleading to so indicate, the court entered judgment for the general partner. We consider whether the trial court erred because Tri Citrus meets the criteria for a judicially-created exception to the statute prohibiting a suspended corporation from prosecuting a lawsuit (Rev. & Tax. Code, § 23301 (hereafter, "section 23301")).

## I. BACKGROUND[1]

### A. The Parties' Partnership Agreement and Tri Citrus's Complaint

In 2005, Tri Citrus, Euclid GP Partners, LLC (Euclid), and nonparty Euclid Holdings LLC entered into an agreement creating a limited partnership, Euclid Leasing Partners, L.P. (the partnership). The primary purpose of the partnership was to acquire an agricultural packing facility from Tri Citrus and then

---

[1] Our factual recitation is drawn from the complaint's allegations, the parties' partnership agreement which was attached as an exhibit to the complaint, and public records judicially noticed by the trial court. (See generally *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924 & fn. 1 (*Yvanova*).)

2

lease the facility to a third party whose operations would generate income for the partnership.

The partnership agreement designated Euclid as the sole general partner. Under the terms of the agreement, the general partner was required to keep "proper books of account." In addition, the partners were entitled to access the partnership's books at any time and a full and accurate accounting of the partnership's affairs was to be made at the conclusion of each fiscal year.

Eight years after the partnership's formation, in April 2013, the California Secretary of State suspended Tri Citrus. Less than two years later, the California Franchise Tax Board (FTB) suspended Tri Citrus too.

In June 2021, while Tri Citrus was still suspended, the company sued Euclid and Evans AG GP, Inc. (Euclid's alleged successor as general partner) for breach of contract, breach of fiduciary duty, accounting, and declaratory relief. Tri Citrus did not sue the partnership or assert that it was acting on the partnership's behalf, and it sought relief for itself alone.

Tri Citrus's primary contention in its lawsuit was that defendants breached their duties under the partnership agreement by failing to maintain proper partnership books and to make available to Tri Citrus an accounting of partnership activities. Tri Citrus averred that "[b]eginning in May 2020," it demanded without success that defendants provide it with financial and tax records to which it was entitled under the partnership agreement.[2] Tri Citrus expressly acknowledged its

_____

[2]    The complaint averred: "[T]ri Citrus has not received authenticated financial documents or tax information for the

3

suspended corporate status and alleged that defendants' alleged breaches "caused [it] to fall out of good standing" and prevented it from regaining its "good standing status."  A footnote in Tri Citrus's pleading maintained that, under *Reed v. Norman* (1957) 48 Cal.2d 338 (*Reed*), it was not barred by section 23301 from bringing suit.

### B.    *Defendants' Demurrer and the Trial Court's Ruling*

Defendants demurred to the complaint, contending in the main that Tri Citrus lacked the capacity to sue because it was a suspended corporation.  Defendants argued the exception identified by our Supreme Court in *Reed* was limited and applied only to shareholder derivative actions.[3]

Tri Citrus opposed the demurrer.  Its opposition retreated from the allegation that defendants' breaches caused it to initially fall out of good standing with the California Secretary of State; instead, Tri Citrus maintained defendants' liability arose

---

Partnership, or the full scope of the financial information requested by Tri Citrus.  To the extent they have provided limited information to Tri Citrus, [d]efendants have not authenticated the information, and Tri Citrus has reason to believe it is not genuine."

[3]     In support of their demurrer, defendants asked the trial court to take judicial notice of two documents: a report from the Secretary of State's office faxed to Euclid's counsel on July 16, 2021, indicting suspensions by the Secretary of State and FTB in 2013 and 2015, respectively; and a printed copy of a page from the Secretary of State's website, dated July 21, 2021, indicating Tri Citrus had been suspended by both the Secretary of State and FTB.

4

only from their failure to provide the requested accountings and the absence of these accountings prevented Tri Citrus from regaining its good standing.  Tri Citrus further argued the exception to section 23301 created by *Reed* was "not limited solely [to] the context of a shareholder derivative action" because it read *Reed* to "stand[ ] for the general principle that courts may craft an equitable solution to avoid strict application of . . . section 23301 where warranted."

In reply, defendants disputed Tri Citrus's characterization of *Reed* and argued the limited exception our Supreme Court identified was inapplicable because, unlike the corporation in *Reed*, Tri Citrus "stopped paying its own taxes and abandoned its business 7 years before it ever allegedly asked for the documents it supposedly needs to pay its taxes."

In October 2021, the trial court granted defendants' unopposed request for judicial notice and sustained the demurrer with leave to amend—finding Tri Citrus lacked capacity to sue. The parties then stipulated to entry of judgment in favor of defendants because Tri Citrus could "not update its corporate status and, therefore, . . . will not be able to amend its Complaint," and the court dismissed the action.

## II.  DISCUSSION

The trial court's ruling was correct.  Settled law requires dismissal of an action where a plaintiff corporation has been suspended, the defendant has promptly raised the plaintiff's lack of capacity to sue, and the plaintiff cannot revive its status as a corporation in good standing.  All three of these circumstances are present here: it is undisputed Tri Citrus is a suspended corporation (and has been one for years), Tri Citrus currently

5

lacks the ability to cure the suspension, and defendants did not waive the issue of Tri Citrus's suspended status because they raised the matter in their initial response to Tri Citrus's complaint. Furthermore, the *Reed* exception to the statutory corporate capacity to sue rules is unavailable because it applies only to shareholder derivative actions and Tri Citrus's complaint was filed on the company's own behalf in an attempt to exercise directly its rights as a corporation and a party to the partnership agreement.

### A.    *Standard of Review*

We review an order sustaining a demurrer de novo. (*Centinela Freeman Emergency Medical Associates v. Health Net of California, Inc.* (2016) 1 Cal.5th 994, 1010.) "[W]e accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law. We may also consider matters subject to judicial notice. [Citation.]" (*Yvanova, supra*, 62 Cal.4th at 924, fn. omitted.) Matters subject to judicial notice include "admissions in plaintiff's opposition to the demurrer." (*Rodas v. Spiegel* (2001) 87 Cal.App.4th 513, 518.) We also consider exhibits incorporated into a complaint. (*Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447.)

### B.    *Section 23301 and the* Reed *Exception*

Section 23301 provides that "the corporate powers, rights and privileges of a domestic taxpayer may be suspended" if any tax, penalty, interest, or other liability due is not paid. (§ 23301, subds. (a)-(c); see also Rev. & Tax Code, § 23301.5 [similar provision regarding the failure to file a tax return].) Among other

6

things, section 23301 prohibits a corporation from prosecuting or defending an action "while its corporate rights are suspended for failure to pay taxes." (*Reed*, *supra*, 48 Cal.2d at 343, accord, *Grell v. Laci Le Beau Corp.* (1999) 73 Cal.App.4th 1300, 1306 ["During the period that a corporation is suspended for failure to pay taxes, it may not prosecute or defend an action"].) The purpose of section 23301 and its predecessor statutes is "to put pressure on the delinquent corporation to pay its taxes." (*Peacock Hill Assn. v. Peacock Lagoon Constr. Co.* (1972) 8 Cal.3d 369, 371 (*Peacock*).)

Although the impact of section 23301 can be "drastic" (4 Witkin, Cal. Procedure (6th ed. 2022) Pleading, § 87), the rule is not absolute. A suspended corporation may, for instance, validate actions taken during the suspension by paying the taxes owed and obtaining a revival of its powers. (*Peacock*, *supra*, 8 Cal.3d at 371; see also *Cadle Co. v. World Wide Hospitality Furniture, Inc.* (2006) 144 Cal.App.4th 504, 512-513 ["When a corporation's suspended status 'comes to light during litigation, the normal practice is for the trial court to permit a short continuance to enable the suspended corporation to effect reinstatement'"].) A lack of capacity to sue is also not a jurisdictional bar. (*Traub Co. v. Coffee Break Service, Inc.* (1967) 66 Cal.2d 368, 371.) Rather, it gives rise to a plea in abatement that may be waived if not raised at the earliest opportunity. (*Color-Vue, Inc. v. Abrams* (1996) 44 Cal.App.4th 1599, 1604.)

In *Reed*, our high court created an equitable exception to section 23301. Reed was a shareholder of Norman Decorating Co., Inc., and filed a derivative suit alleging dissipation of corporate assets and naming the corporation, another shareholder (Norman), and the corporation's officers and directors as defendants. (*Reed*, *supra*, 48 Cal.2d at 340.) During

7

the course of the suit, the corporation's right to engage in litigation was suspended for failure to pay state taxes. (*Id*. at 341.) After judgment was entered against him, Reed appealed. Defendants moved to dismiss the appeal on the ground that the corporation's right to engage in litigation was suspended and the suspension extended to Reed because his action was derivative in nature. (*Id*. at 340-341.)

Our Supreme Court denied the motion and distinguished the position of a corporation in a shareholder derivative lawsuit from other actions: "[I]n a stockholders derivative action, the corporation is forced to be a party because any recovery goes through the corporate channel and thus enhances the stockholders' interest therein. The corporation is not attempting to exercise its rights as a corporation. It is being used as a necessary channel by the shareholders."[4] (*Reed, supra*, 48 Cal.2d at 343, 345.) The *Reed* Court went on to observe that in that particular case "[t]he books and records of the corporation are in the hands of the mismanaging officers according to plaintiff's complaints and thus the shareholders are not in a position to make a return or compute the franchise tax. In such a case it is not equitable to permit section 23301 . . . to stand as a shield for protecting allegedly dishonest corporate officials." (*Id*. at 343.) Our highest court further held that Reed should be given an opportunity to pay the taxes and have the corporation reinstated

---

[4]    In reaching its decision, *Reed* relied upon *Weinert v. Kinkel* (N.Y. 1947) 296 N.Y. 151 [71 N.E.2d 445], which holds that a "'court may dispense with the presence of a defunct corporation *in a derivative action*, if the circumstances warrant such exercise of its equitable powers.'" (*Reed, supra*, at 343, emphasis added.)

8

because the defendants failed to raise the corporation's suspended status prior to filing the motion to dismiss. (*Id.* at 344 & fn. 3.)

> ### C. *Dismissal Was Required Because Tri Citrus Lacked the Capacity to Sue and Was Not Acting on Behalf of the Partnership, Making the* Reed *Exception to Section 23301 Unavailable*

Dismissal of Tri Citrus's complaint was required because it was undisputed Tri Citrus was a suspended corporation—Tri Citrus admitted as much in its complaint and defendants presented unchallenged evidence to the same effect. It was also undisputed that Tri Citrus could not revive its good standing.[5] As a long-suspended corporation with no immediate prospects for revival, Tri Citrus lacked the capacity to prosecute its claims. (*Friends of Shingle Springs Interchange, Inc. v. County of El Dorado* 200 Cal.App.4th 1470, 1474, 1478 & fn. 6 [affirming dismissal of petition without leave to amend because petitioner's

---

[5] Tri Citrus alleges defendants' failure to provide an accounting prevents it from restoring its status as a corporation in good standing, but we disregard the conclusory allegation. Even if the absence of an accounting would hinder filing of what the complaint calls "appropriate" tax returns (though neither the complaint nor Tri Citrus's opposition to the demurrer details why that would be so, and Tri Citrus declined the opportunity to file an amended pleading), there is still no apparent reason why the absence of an accounting would prevent the company from remedying at least the conditions that caused its initial suspension years earlier—a cause that Tri Citrus concedes was not attributable to defendants.

corporate powers, as raised in respondents' demurrer and established by judicially noticed public records, had been suspended for two and a half years prior to the petition's filing].)

*Reed* does not provide a basis for holding otherwise. Unlike Reed, Tri Citrus was not suing on behalf of the corporate entity in which the parties shared an interest (i.e., the partnership) or otherwise claiming defendants' alleged misconduct had injured the partnership; indeed, the partnership was not even named as a party. Instead, Tri Citrus was suing on its own behalf and, as such, was attempting to exercise directly its rights as a corporation and as a party to the partnership agreement. As a result, Tri Citrus's lawsuit, unlike the one in *Reed*, was an individual action, not a derivative one. In addition, in contrast to *Reed* where the defendant shareholder and officers sought to hide behind a shield of corporate incapacity which they themselves had created during the course of the litigation, defendants—by Tri Citrus's own admission in its demurrer opposition filed in the trial court[6]—did not cause Tri Citrus's suspension, which occurred years before this action's commencement. (*Moore v. Hill* (2010) 188 Cal.App.4th 1267, 1271, fn. 3 [holding *Reed* "inapposite" because "the inequity *Reed* sought to avoid—the defensive use of the nonpayment of taxes in order to avoid liability—does not exist here"].) Finally, unlike the defendants in *Reed*, defendants here did not sit on their rights. Instead, at the first opportunity to respond to Tri Citrus's complaint, they raised

---

[6]  Tri Citrus conceded that it "does not allege, as Euclid GP claims, that Euclid GP 'caused' Tri Citrus to initially fall out of good standing with the California Secretary of State."

10

Tri Citrus's suspension as a bar to the initiation and prosecution of the lawsuit.

Without the benefit of any supporting authority, Tri Citrus contends *Reed* created a "general" equitable exception which "easily extends beyond derivative actions." We reject Tri Citrus's contention because it is contrary to the express language and reasoning of *Reed*. *Reed* does not state or suggest that the exception it created to section 23301 was general in nature. To the contrary, *Reed* confined the basis for its exception to the nature of shareholder derivative actions and the specific facts before it. In view of the long-established policy prohibiting delinquent corporations from having access to California courts, the limited nature of the *Reed* exception has been recognized by subsequent court decisions and legal treatises. (See, e.g., *Casiopea Bovet, LLC v. Chiang* (2017) 12 Cal.App.5th 656, 663 [citing *Reed* for the proposition that a "stockholder derivative action does not exercise rights of a suspended corporation, but uses the corporate channel to enhance stockholders' interest in enforcing fiduciary [duties] of the directors of the corporation"]; *Lewis v. LeBaron* (1967) 254 Cal.App.2d 270, 279-280 [construing *Reed* as providing an exception for shareholder derivative actions to the general rule prohibiting suspended corporations from prosecuting or defending lawsuits]; 9 Witkin, Cal. Procedure (6th 2022) Appeal, § 88 [citing *Reed* for the proposition that "[t]he general rule [prohibiting suspended corporations from prosecuting or defending an action] will seldom apply to a shareholder's derivative suit"].) We reach the same conclusion.

11

## DISPOSITION

The judgment is affirmed.  Euclid shall recover its costs on appeal.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, J.

We concur:



RUBIN, P. J.



KIM, J.