**FLEMING et al. v. CHARLES L. HARNEY CONST. CO.**

**No. 10062.**

United States Court of Appeals District of Columbia Circuit.

Argued March 16, 1949.

Decided July 18, 1949.

Writ of Certiorari Denied Dec. 5, 1949.
See 70 S.Ct. 242.

---

66

Messrs. Frederick W. Smith, Attorney, Department of Justice, Washington, D. C., with whom A. Devitt Vanech, Assistant Attorney General, and Roger T. Marquis, Attorney, Department of Justice, Washington, D. C., were on the brief, for appellants.

Mr. Harold Leventhal, Washington, D. C., with whom Mr. John J. Courtney,

Washington, D. C., was on the brief, for appellee.

Before EDGERTON, CLARK, and PROCTOR, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal taken from the judgment of the District Court granting summary judgment for appellee, Charles L. Harney Construction Company, and declaring appellee "to be in possession of and eligible to exercise the right of a former owner, as provided by Section 23 of the Surplus Property Act of 1944, both as originally enacted and as amended, 50 U.S. C.A.Appendix, § 1632, to repurchase" certain property in California.

On February 9, 1948, appellee instituted this action by filing a complaint in the District Court naming as defendants therein the present appellants, Philip B. Fleming (Administrator, Federal Works Agency), W. E. Reynolds (Commissioner of Public Buildings, Public Buildings Administration, Federal Works Agency), and Jess Larson (Administrator, War Assets Administration)—all three being sued both as individuals and in their official capacities. The primary relief sought by the complaint was a declaration that the plaintiff possessed and could exercise the right of a former owner of a California hotel to repurchase that property.[1] It is evident from the above-quoted portion of the judgment of the court below that this relief prayed was granted in its entirety by the final order from which this appeal was taken. After the complaint was filed, defendants moved to dismiss the complaint or for summary judgment. This motion was denied. Thereafter plaintiff filed a motion for summary judgment. The trial court found, after examination of all the pleadings including affidavits filed by both parties, that there was no genuine issue as to any material fact and that plaintiff was entitled to

judgment as a matter of law. Judgment was thereupon entered as described above.

It is apparent from study of all of the pleadings and their attached affidavits and exhibits that no genuine issue as to any material fact existed and that the ruling below was proper in this respect. However, since it is our decision that the judgment below was incorrect as a matter of law, we here state chronologically the pertinent facts which led to the filing of the complaint by appellee.

By condemnation proceedings the United States (War Department) acquired title on June 22, 1942, to property then known as the El Mirador Hotel in Palm Springs, California. At the time of acquisition this property was owned by the Palm Springs Holding Corporation, a California corporation. Thereafter, the property was identified and used as the Torney General Hospital. The United States paid the agreed value of $425,000 to the corporation for this property.[2] On September 2, 1942, the Board of Directors of that corporation adopted a resolution authorizing sale of all assets of the corporation, except cash on hand (amounting to about $235,000), to its two principal stockholders, Warren B. Pinney and Ralph D. Lacoe, Jr., for the sum of $750.00. On September 15, 1942, a bill of sale to Pinney and Lacoe was executed. Having thus acquired control of all outstanding stock of the corporation, these two, on October 1, 1942, for a consideration of $260,000, transferred all of the corporate stock to four individuals (hereinafter, for convenience, referred to as the Harneys) in the following manner: to Charles L. Harney, 4,248 common and 775 preferred; to P. E. Harney, 3,224 common and 589 preferred; and to Henry F. Wrigley and C. J. Carroll each, 10 common and 1 preferred.

On October 2, 1942, the day following acquisition of the stock by the Harneys, a director's meeting was called at which new

[1] The complaint also sought the issuance of a mandatory injunction requiring defendants (appellants) to deal with plaintiff as with a former owner. This prayer was not acted upon by the trial judge and is thus not in issue in this appeal.

[2] The property at the time of acquisition included the hotel buildings and furnishings, about 28 acres of land, and other personal property.

officers were elected and a resolution was passed amending the Articles of Incorporation by changing the name of the corporation to the Charles L. Harney Construction Company, by eliminating the provisions for carrying on a hotel business and substituting therefor authority to carry on a general contracting business. The principal office of the new corporation was also changed from Los Angeles to San Francisco. Thereafter appellee corporation did not engage in any way in the hotel business.

On November 2, 1944, appellee company filed a certificate of election to dissolve with the Secretary of State of the State of California. A certificate of dissolution of appellee dated June 28, 1945, was filed with the Secretary of State on August 4, 1945. The latter certificate signed by Charles L. Harney, by Wrigley and by Carroll, recited that "said corporation has been completely wound up, its known assets distributed, * * * and its other known assets and liabilities actually paid or adequately provided for, and that said corporation is therefore, dissolved."

The hotel was used by the Army as the Torney General Hospital until February 4, 1946, when it was declared surplus under the Surplus Property Act of 1944.[3] When appellee learned that the property was to be declared surplus, it notified the War Assets Administration of its intention to exercise the repurchase priority of a former owner. On March 4, 1946, the War Assets Corporation[4] classified the property as "commercial tract, improved." On March 15, 1946, the property was assigned to the Federal Works Agency for disposition in accordance with the Act. The property having been advertised for disposal by that Agency, the following bids were received between March 7, 1947, and June 5, 1947: (1) by the Reconstruction Finance Corporation, a bid which was later withdrawn; (2) a priority bid by the City of Palm Springs and the Desert School District; (3) a bid of $700,000 (the adjusted purchase price for former owners) by ap-

pellee corporation; (4) another $700,000 bid by Pinney and Lacoe, also claiming to be former owners; (5) a veteran's priority bid of $1,150,000 by Irwin Frank and Lloyd W. Gardner; and (6) ten non-priority bids of $1,050,000 or less.

On January 27, 1947, the War Assets Administration notified appellee that since appellee corporation had been dissolved it could no longer exercise the repurchase priority of a former owner. In response to this notification appellee, by letter dated March 13, 1947, called attention to its claim that dissolution does not terminate the existence of a corporation under Section 399 of the California Civil Code which provides in part that any assets omitted from the winding up "shall continue in the dissolved corporation." By letter of April 1, 1947, the War Assets Administration stated the opinion that the right to repurchase was not an asset within the meaning of Section 399 of the California Civil Code. Further consideration of the matter was promised, however, upon submission of satisfactory evidence that California law allowed a dissolved corporation to acquire real property.

Appellee then sought the advice of the Secretary of State of the State of California who, by letter dated June 2, 1947, advised that in his opinion the repurchase right allowed by Section 23(d) of the Surplus Property Act of 1944 constitutes a valuable asset of the dissolved corporation. Appellee also procured, in an ex parte proceeding in the Superior Court of the State of California in and for the City of San Francisco, an order of that court dated June 3, 1947, adjudging appellee to be in continued existence and in possession of the right of a former owner to repurchase under the Surplus Property Act of 1944. The court order also authorized appellee herein to proceed to carry out the collection of the asset (repurchase of the property for the adjusted price below the fair market value thereof). Appellee thereupon submitted this Superior Court order and the letter of the California Secretary of

[3] 58 Stat. 765 (1944), 50 U.S.C.A.Appendix, § 1611 et seq.

[4] Successor to Surplus Property Administration. See 11 Fed.Reg. 2644, footnote.

State together with a tender of $700,000 (the adjusted price) to the Federal Works Agency. Appellants were also notified on July 28, 1947, that an agreement had been reached between Pinney and Lacoe and the Harneys whereby both groups of stockholders would share in the benefits derived from the proposed repurchase by appellee.

By letter dated August 20, 1947, the Acting Administrator of the Federal Works Agency stated that he had reviewed appellee's proposal to repurchase and had concluded that appellee was "not eligible, as a matter of law, to assert the priority repurchase privilege of former owners." Enclosed with that letter were copies of a memorandum opinion of the General Counsel for the Agency. The views expressed in that memorandum opinion embody some of the same points that are raised by appellants in this appeal, namely; the property was not of a class to which a former owner's priority right was extended by the 1944 Act as originally enacted; that such property did not become subject to such right until the amendment to the Act on August 7, 1946 [5]; and that the amendment did not confer any right on appellee because it had theretofore dissolved.

Thereafter, in a second ex parte proceeding in the California Superior Court, appellee informed that court of the Federal Works Agency's "ruling" of August 20, 1947, and succeeded in obtaining from that court a supplementary order authorizing appellee to proceed with the collection of the asset, using the courts to do so if necessary. Appellants were notified of this supplementary order of the California court and, by letter dated February 2, 1948, appellant Fleming adhered to his previous ruling. Appellee then filed in the District Court the complaint described above and successfully obtained the above-quoted declaratory judgment sought.

We are thus called upon to decide whether, in the circumstances set forth above, appellee had the right of a former owner to repurchase this property under the 1944 Act as originally enacted and whether appellee had that right under the 1946 Amendment. As we have previously indicated, it is our opinion that appellee did not possess this right under either the original or the amended statute.

Section 23(a) (1) of the original Act read in pertinent part as follows: "The term 'real property' means property consisting of land, together with any fixtures and improvements thereon, located outside of the District of Columbia, but does not include war housing, industrial plants, factories, or similar structures and facilities, or the sites thereof, or land which the Board determines is essential to the use of any of the foregoing; * * *." [6]

▪ It is clear that the applicability vel non of the original Act to this hotel property turns upon the meaning of "similar structures and facilities" in the above-quoted statute. The original Act provided no definition of this phrase. However, Congress did, by Section 9(a), delegate to the appropriate administrative agency authority to "prescribe regulations to effectuate the provisions of this Act." [7] Acting pursuant to that authorization, the following administrative definition was given of this phrase: " 'Similar structures and facilities' * * * shall include structures and facilities classified by the [War Assets] Administrator as (i) commercial, * * *" [8] We cannot say that this is an unreasonable definition. Further, there can be no doubt that the hotel business is commercial in nature and hence that hotel property is properly classified as commercial. It follows that under the 1944 Act there was no priority to repurchase given to former owners of hotel property and the District Court was in error in deciding to the contrary. This would be true even if the appellee here were the original corporation from which the property was taken by the Government, that is, even if present appellee were the Palm Springs Hold-

[5] 60 Stat. 886, 50 U.S.C.A.Appendix, § 1632.

[6] 58 Stat. 777, 50 U.S.C.A.Appendix, § 1632(a) (1).

[7] 58 Stat. 769, 50 U.S.C.A.Appendix, § 1618(a).

[8] 11 Fed.Reg. 2644. See also 11 Fed. Reg. 7612–3.

ing Corporation with all its original stockholders. On oral argument before this court counsel for appellee admitted that this is so by conceding that appellee would have no status were it not for a provision of the California Civil Code discussed below which allegedly sustained the corporate life of appellee until the 1946 amendment to the 1944 Act. We therefore hold that appellee had no status to claim the right of a former owner to repurchase under the original 1944 Act.

We are thus brought to the pivotal question in this appeal, namely, whether the 1946 amendment to the 1944 Act gave to this appellee the right to assert the repurchase priority of a former owner. Decision of this point, which point is really appellee's sole basis for suit, necessarily requires also decision as to the effect to be given the two previously mentioned rulings of the California Superior Court.

The pertinent section of the 1944 Act as amended in 1946 and as it stands today reads as follows: "The term 'real property' means property consisting of land, together with any fixtures and improvements thereon (including hotels, apartment houses, hospitals, office buildings, stores, and other commercial structures) located outside the District of Columbia, * * *." [9]

From the above it is immediately apparent that, under the Act as amended, a former owner has the right to repurchase hotels and hospitals and that the property at issue in this case clearly falls within the types of property specified by the amended Act. Therefore, if appellee corporation was actually the former owner of the hotel and if appellee was in being at the time of the amendment above quoted, then appellee possessed the right to repurchase at an adjusted price. However, it is the opinion of this court that appellee did not, and does not, possess that right for two reasons.

First, appellee corporation is not in fact, and never was, the former owner of the El Mirador Hotel. The undisputed facts before this court as set out above

show that when the Government took over the hotel in 1942 the Harneys had absolutely no interest whatsoever in that hotel and at that time there was no Charles L. Harney Construction Company. The Act itself does not attempt to define the term "former owner" but the Act does use the term "person from whom such property was acquired", 50 U.S.C.A.Appendix, § 1632(d) (1) (A) and the context in which these two terms is used makes it clear that they are synonymous. The Government acquired the property from the Palm Springs Holding Corporation, a corporation engaged in the hotel business with principal offices in Los Angeles. Appellee, the Charles L. Harney Construction Company, is a corporation which, until its voluntary dissolution in 1945, was engaged solely in the general contracting business and which maintained its principal office in San Francisco. None of the stockholders of appellee were ever stockholders of the Palm Springs Holding Corporation. The corporate identity had been completely changed so that, in our view, appellee cannot be considered the "person from whom such property was acquired." We find further support for this position from other provisions of the Act. Section 23(g) provides as follows: "In the case of the death of a person entitled under this section to rights as a former owner or veteran, his spouse and children, in that order, shall succeed to such rights of the decedent existing at the time of his death. Any preference right under subsection (f) to which a person would have been entitled except for his death while in the active military or naval service of the United States, shall be extended to his spouse and children, in that order. No preference right may be assigned or exercised by power of attorney or through a power to select except as may be permitted by regulations prescribed by the Board in order to prevent the loss of such right by the holder thereof." [10]

This section thus expressly provides for survivorship rights of wives and children

---

[9] Act of August 7, 1946, 60 Stat. 886, 50 U.S.C.A.Appendix, § 1632.

[10] 58 Stat. 779 (1944), 50 U.S.C.A.Appendix, § 1632(g).

of deceased persons. While it is true that the word "person" includes a corporation when used generally in the Act,[11] yet when used here in connection with "spouse and children," it can mean nothing but a natural person. Therefore, Congress, we must assume, purposely failed to provide for any survivorship rights in a successor corporation. This court lacks the power to establish rights or privileges which Congress has seen fit to withhold. Further evidence that Congress did not intend to include successor corporations such as appellee within the preferred group of former owners is that portion of Section 23(g) which forbids the assignment of preference rights. We thus hold that appellee has no status as a former owner to repurchase this property at an adjusted price.

■ There is, in this case, a further reason for ruling as we do in favor of appellants. The foregoing portion of this opinion assumes arguendo that appellee is a corporation in being at the present time and thus capable of taking the property in question. We believe, however, that this assumption cannot be justified in this case, notwithstanding the ex parte decisions of the California Superior Court to the contrary. That is to say that appellee corporation passed out of legal existence prior to the time the property was declared surplus and also prior to the enactment of the 1946 amendment which gave a former owner the right to repurchase. It is true that the California court has twice ruled ex parte that appellee is still in existence for the purpose of bidding for this property. It is also true that Section 399 of the California Civil Code states that the corporate existence shall continue "for the purpose of winding up its affairs" and in order that it may "collect and divide its assets."[12] In this respect California differs from the more prevalent federal and common law rules, it being generally considered in the federal courts that "a corporation

which has been dissolved is as if it did not exist, and the result of the dissolution cannot be distinguished from the death of a natural person in its effect."[13] Further, there can be no doubt that the law of the state of incorporation governs generally as determining the status of a corporation. Thus we may accept the determination of the California court that appellee still draws breath for the purpose of winding up its affairs and for collection of its assets, but it does not follow that the ex parte decision is in any way controlling when it comes to applying and interpreting the federal Act. We are of the opinion that the repurchase of this hotel property cannot safely be considered part of the "winding up" process and that, under the circumstances of this case, the right to repurchase cannot be considered an asset accruing to this appellee. We believe that when the California law allows a dissolved corporation to "collect and divide its assets" it can only mean that such a corporation may collect and divide its then existing assets. As we have already shown, appellee was already dissolved long before this "asset," if such it was, came into being. Further strength is added to our view by a recent decision of the Supreme Court of California construing this very section of the California Civil Code. In Boyle et al. v. Lakeview Creamery Co. et al., that court said: "The only purpose of section 399 is to stop further doing of business as a going concern, and limit corporate activities too winding up."[14]

Another California court speaking even more recently said: "The purpose of section 399 is not to enlarge the powers of a dissolved or expired corporation but rather to limit them."[15]

■ Finally, a careful examination of the federal Act both as originally enacted and as amended reveals no congressional intent to bestow a preference upon a dis-

---

[11] Section 3(h), 58 Stat. 767, 50 U.S.C. A.Appendix, § 1612(h).

[12] Civil Code of California, § 399 (1945 Ed.).

[13] Oklahoma Gas Company v. Oklahoma, 1927, 273 U.S. 257, 259, 47 S.Ct. 391, 392, 71 L.Ed. 634.

[14] 1937, 9 Cal.2d 16, 68 P.2d 970.

[15] Fidelity Metals Corporation v. Risley et al., 1946, 77 Cal.App.2d 377, 595, 175 P.2d 592, 595.

solved corporation. Rather, the clear purpose of Congress in enacting this law was to favor going concerns from which property was taken by the Government to meet the national need in time of war. We see no basis for overturning the administrative determination that appellee is not entitled to bid for this property. Accordingly, the judgment of the District Court in this case must be reversed and the cause remanded with instructions to enter judgment for appellants herein.

Reversed and remanded with instructions.