**Frank J. WEINSTOCK, Plaintiff,**

v.

**Frank SINATRA et al., Defendants.**

**Civ. No. 73–2311–R.**

United States District Court,
C. D. California.

June 24, 1974.

Henry A. Plattner, Beverly Hills, Cal., Marvin E. Lewis, Law Office of Lewis

& Rouda, San Francisco, Cal., for Frank J. Weinstock.

Sanford H. Mendelson, Rudin & Mendelson, Beverly Hills, Cal., for Frank Sinatra and others.

Steck & Marston, Paul H. Marston, Pasadena, Cal., for Trinidad Hotel, Inc.

## MEMORANDUM OPINION AND ORDER

REAL, District Judge. *

Plaintiff brought his action alleging jurisdiction in this court by reason of diversity of citizenship of the parties. His prayer is for damages, claiming that an assault and battery were perpetrated upon him by the individually named defendants herein. He also asks for the visitation of liability upon defendant Trinidad Hotel, Inc. (hereafter Trinidad), a Delaware corporation, alleging the failure of Trinidad to adequately protect him from the known violent propensities of the individual defendants to engage in the assaultive conduct which resulted in his claimed injuries.

All defendants have been served with process, and the matter is at issue as to the individually named defendants Trinidad brings its motion for leave to file an answer to the complaint, maintaining it is otherwise proscribed from appearing in this action by reason of the application to its corporate status in this District of the provisions of the California Revenue and Taxation Code.

California Revenue and Taxation Code section 23301 provides in its pertinent part:

"Except for the purpose of amending the articles of incorporation to set forth a new name . . . . the exercise of the corporate powers, rights and privileges of a foreign tax payer in this State shall be forfeited if any of the following conditions occur:

(a) If any tax, penalty or interest, or any portion thereof . . . . is not paid . . . ;"

Trinidad has been suspended from conducting business operations in the State of California, having failed to meet the franchise tax obligations of the California Revenue and Taxation Code.[1] Such suspension or forfeiture brings with it the inability to either sue *or be sued* within the State of California. Boyle v. Lakeview Creamery, 9 Cal.2d 16, 68 P.2d 968–970 (1937); Reed v. Norman, 48 Cal.2d 338, 309 P.2d 809 (1940); Baker v. Ferrel, 78 Cal.App.2d 578, 177 P.2d 973–974 (1947); Graceland v. Peebler, 50 Cal.App.2d 545, 123 P.2d 527–528 (1942); Ocean Park Bath House and Amusement Co. v. Pacific Auto Park Co., 37 Cal.App.2d 158, 98 P.2d 1068 (1940); Schwartz v. Maggar, 168 Cal.App.2d 182, 335 P.2d 487–492 (1959); see also Mather Construction Co. v. U. S., 475 F.2d 1152 (Court of Claims 1973). These cases certainly preclude the bringing of a suit *by* Trinidad while in its present status. The concern of the instant motion is the resolution of whether or not these cases applied in a diversity of citizenship action in this Court defeat the maintenance of an action *against* Trinidad and, if not, what the consequences of Trinidad's suspension are to its inability to defend.

It has long been held that the capacity of a corporation to sue or be sued in federal court is determined by the law under which it is organized. David Lupton's Sons v. Automobile Club of America, 225 U.S. 489, 32 S.Ct. 711, 56 L.Ed. 1177 (1912); *see also,* Barling v. Bank of British North America, 50 F. 260 (9th Cir. 1892). In *David Lupton's Sons, supra,* the Supreme Court considered the application of a New York statute proscribing suit by a foreign corporation (David Lupton's Sons Co.) in the State of New York until the foreign corporation had obtained a certificate to do business as required by New York's general corporation law. Interpreting the statute to apply only to actions in the

1. California Revenue and Taxation Code, section 23301 et seq.

courts of the State of New York, the court noted:

". . . . [T]he state could not prescribe the qualifications of suitors in the courts of the United States, and could not deprive of their privileges those who were entitled under the Constitution and laws of the United States to resort to the Federal courts for the enforcement of a valid contract . . . ." *Id.* 225 U.S. at 500, 32 S.Ct. at 714.

■ What apparently was clear enough in *David Lupton's Sons, supra,* was reconsidered by the Supreme Court in the case of Angel v. Bullington, 330 U.S. 183, 67 S.Ct. 657, 91 L.Ed. 832 (1947), after the supercession of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).[2] In *Angel, supra,* the court held that a federal court, sitting in North Carolina, could not grant relief to a foreign suitor in the face of a determination by the North Carolina Supreme Court that North Carolina's no-deficiency judgment statute precluded such relief. Expressing the Court's views on the impact of *Erie, supra,* Mr. Justice Frankfurter says:

"Cases like Lupton's Sons Co. v. Automobile Club, 225 U.S. 489, 32 S.Ct. 711, 56 L.Ed. 1177, are obsolete insofar as they are based on a view of diversity jurisdiction which came to an end with Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. That decision drastically limited the power of federal district courts to entertain suits in diversity cases that could not be brought in the respective State courts or were barred by defenses controlling in the State courts . . . ." *Id.* 330 U.S. at 192, 67 S.Ct. at 662.

So unlike *David Lupton's Sons'* theory of separateness of federal court and state courts in diversity actions, *Angel supra,* nailed down the principle that "[f]or purposes of diversity jurisdiction a federal court is 'in effect only another court of the State.'" *Id.* at 187, 67 S. Ct. at 659; *see also,* Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

If the voice of *Angel, supra,* were not enough, the death knell for *David Lupton's Sons, supra,* rang clear in Woods v. Interstate Realty Co., 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949). In *Woods, supra,* the court faced directly the right of a foreign corporation, which had failed to comply with a state law requiring it to file a written power of attorney designating an agent on whom service of process might be accomplished, to bring an action for a broker's commission allegedly due on the sale of real estate within the state. Claiming diversity of citizenship, the corporation proceeded in federal district court, and summary judgment was granted against it on the basis of the state statute declaring the corporation's inability to bring or maintain any action or suit in any of the courts of the state. The Court of Appeals for the Fifth Circuit reversed the district court relying on *David Lupton's Sons, supra.* In reversing the Fifth Circuit, the Supreme Court reiterated its position in *Angel, supra,* and held that where "one is barred from recovery in the state court, he should likewise be barred in the federal court." *Woods, supra,* 337 U.S. at 538, 69 S.Ct. at 1237.

■ Although Rule 17(b)[3] in its present form suggests the continued vitality of the principles of *David Lupton's Sons, supra,* the later intervention

---

2. *See also,* Hanna v. Plumer, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); Power City Communications, Inc. v. Calavaras Telephone Company, 280 F.Supp. 808 (E.D. Cal.1968).

3. Federal Rule of Civil Procedure Rule 17(b) provides in its pertinent part:

"(b) Capacity to Sue or Be Sued.
. . . [T]he capacity of a corporation to sue or be sued shall be determined by the law under which it was organized . . . ."

of *Erie, supra,* and the pronouncements of *Angel, supra,* and *Woods, supra,* make clear that Rule 17(b) applies only to the capacity of a corporation to sue or be sued in those actions coming to the federal courts in the exercise of their jurisdiction in cases *excluding* diversity of citizenship.

The cases have not, however, addressed themselves to the anomaly presented in which a suit is brought *against* a corporate defendant who has not qualified under the laws of the forum state but who is otherwise amenable to process.[4] A literal reading of *Angel supra,* and *Woods, supra,* effectuating the policies of California Revenue and Taxation Code section 23301, would preclude the plaintiff from recovery against an alleged tort feasor causing him damage. To apply these cases to reach such a conclusion is certainly anathema to the philosophy of *Erie, supra,* which purports to eliminate "discriminations against citizens of the State in favor of those authorized to invoke diversity jurisdiction of the federal courts." *Woods, supra,* 337 U.S. at 538, 69 S.Ct. at 1237. Trinidad cannot so easily escape its alleged liability by reason of its own volitional failure to comply with the strict mandates of California law.

■ A rational application of California Revenue and Taxation Code sections 23301–23303 and of the principles espoused in *Angel, supra,* and *Woods, supra,* is that the admitted incapacity of Trinidad "to be sued" does not relate to its amenability to suit *per se* but rather to its inability to take any action, in court, in its defense, once suit has been commenced against it. Such an application does not create an insurmountable burden for Trinidad nor does it visit any injustice upon it. By the simple expediency of the procedures of California Revenue and Taxation Code section 23305[5] Trinidad can place itself in a position to defend the present action. Absent such revival of its corporate powers, however, Trinidad must suffer the consequences of its own act—upon application of the plaintiff, the entry of a default judgment against it. *Woods, supra,* 337 U.S. at 537, 69 S.Ct. 1235; Meisner v. Reliance Steel and Aluminum Co., 273 F.2d 49 (9th Cir. 1959); Rock-Ola Manufacturing Corp. v. Wertz, 249 F.2d 813 (4th Cir. 1957); Horowitz v. Food Town, Inc., 241 F.Supp. 1 (E.D.La. 1965).

So long as Trinidad continues to remain in default of the laws of the State of California regulating corporate business, it cannot defend in any manner the suit brought against it.[6] Trinidad's motion, therefore, is denied.

NOTE: Since this matter has been heard and submitted, the Court has been informed that Trinidad has made its peace with the State of California and an answer has been filed. Should any order be necessary to clarify the record, it is now ordered the answer shall be filed by the clerk.

---

4. As in the present case, where the defendant continues to carry on a business within the State of California.

5. California Revenue and Taxation Code section 23305 provides a procedure for re-instatement of corporate powers.

6. It is just this course relative to default that the court in Boyle v. Lakeview Creamery, 9 Cal.2d 16, 68 P.2d 968 (1937) seems to espouse. Moreover, Alhambra-Shumway Mines v. Alhambra Gold Mine Corp., 155 Cal.App.2d 46, 317 P.2d 649 (1957) found the court reversing a judgment in favor of a suspended corporation based on various special defenses since the corporation should not have been able, in the first instance, to appear to even raise the defenses. *See also,* City National Bank of Beverly Hills v. Jay Miles 227 Cal.App.2d 837, 39 Cal.Rptr. 184 (1964); Schwartz v. Magyar House, Inc., *supra.*