**Don FARRIS, Trustee, Plaintiff,**

v.

**SAMBO'S RESTAURANTS, INC., Defendant.**

**Civ. A. No. 3–80–0099–H.**

United States District Court, N. D. Texas, Dallas Division.

Oct. 9, 1980.

Peter S. Chantilis, Dallas, Tex., Barry A. Brown, Goldberg, Kusin & Brown, Houston, Tex., for plaintiff.

Joe B. Harrison, Gardere, Wynne & Jaffe, Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

SANDERS, District Judge.

In this diversity case, Plaintiff Don Farris, Trustee ("Farris"), a resident of Texas, filed his Original Complaint on January 23, 1980, against Defendant Sambo's Restaurants, Inc. ("Sambo's"), a California corporation with its principal place of business in Santa Barbara, California, seeking damages for breach of a lease agreement, the performance of which was guaranteed by Sambo's. Sambo's filed its Original Answer on March 19, 1980, voluntarily subjecting itself to the jurisdiction of this Court, and on May 30, 1980, filed a Motion for Leave to File First Amended Answer and Counterclaim. Farris responded on June 9, 1980, opposing Sambo's Motion for Leave to Amend, and on June 10, 1980, Farris filed his Motion to Strike Defendant's Answer and Enter Default Judgment. It is Plaintiff's Motion to Strike that is presently before the Court for consideration.

In essence, Farris asserts that Defendant Sambo's has accrued and failed to pay fran-

chise taxes imposed by the State of Texas on foreign corporations and, for that reason, is barred from suing or defending in this lawsuit pursuant to Tex.Tax.–Gen.Ann. art. 12.14(2) (Vernon 1969 & Supp. 1980). Sambo's opposes by arguing that it is not subject to the Texas disqualification statute because it is not doing or transacting business in that state. Upon review of the pleadings in this case, the parties' briefs and supporting affidavits and exhibits, and the oral arguments of counsel, it is the considered opinion of the Court that Plaintiff's Motion to Strike should be granted.

### Erie Considerations

The threshold question to be considered in determining whether to apply the Texas statute in the instant case is whether Sambo's capacity to be sued is determined by federal or state law. Federal Rule of Civil Procedure 17(b) provides that the capacity of a corporation to sue or be sued is determined by the law under which it was organized. For a long time it was thought that if a corporation could sue in the state in which it was organized it could sue in the federal courts of every state and that the state of the forum could not prescribe the capacity of corporate suitors in the courts of the United States. *David Lupton's Sons Co. v. Automobile Club of America*, 225 U.S. 489, 32 S.Ct. 711, 56 L.Ed. 1177 (1912). In *Lupton's Sons*, the Supreme Court reviewed the applicability of a New York statute proscribing suit by a foreign corporation in New York courts where the corporation had not first obtained a certificate to do business in accordance with the state's general corporation laws. The Court concluded that the statute applied only to actions brought in the New York state courts and did not bar proceedings by the foreign corporation in the federal district courts of New York.

The *Lupton's Sons* case, however, was predicated on a view of diversity jurisdiction that came to an abrupt end with *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and its progeny, and the case has accordingly been over-

ruled. *Woods v. Interstate Realty Co.*, 337 U.S. 535, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949). In light of *Erie*, for purposes of diversity jurisdiction a federal court is, "in effect, only another court of the State ...." *Guaranty Trust Co. v. York*, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079 (1945). Where a party is barred from recovery in the state court he should likewise be barred in federal diversity proceedings, in order to avoid the sort of discrimination against citizens of the forum in favor of those authorized to invoke federal diversity jurisdiction that *Erie* sought to eradicate.

In *Woods v. Interstate Realty Co., supra,* a Tennessee corporation which had not registered to do business in Mississippi filed a federal diversity action to recover a brokerage commission on a real estate transaction. The Supreme Court reversed the Court of Appeals, which had relied on the *Lupton's Sons* case, and held that the Mississippi disqualification statute closed the door to the federal courthouse just as effectively as it closed the door to the state courthouse.

Although the language of Rule 17(b) has not been altered to reflect the demise of the *Lupton's Sons* doctrine, *Erie* and *Woods* leave no doubt that Rule 17(b) now applies only to the capacity of a corporation to sue or be sued in federal court in cases where subject matter jurisdiction is pitched on grounds other than diversity of citizenship. In diversity cases, Rule 17(b) has been effectively qualified to afford a foreign corporation relief in the federal court only if it has an enforceable remedy in the courts of the state in which the federal court is sitting. "While technically the corporation may have capacity to sue in the federal court pursuant to Rule 17(b) it cannot recover where recovery would not be possible in the state court. Any valid state law closing its courts to a foreign corporation which is not qualified to do business in the state must, therefore, be given effect in the federal courts of such state in a case based solely on diversity or alienage jurisdiction." 3A Moore's Federal Practice ¶ 17.21 at 17–226 (2d ed. 1979). We must look therefore to the laws of Texas and the effect they

would have on the ability of Sambo's to raise a defense in its behalf in the instant litigation.

### Applicable Texas Law

Article 8.01(A) of the Texas Business Corporation Act provides that no foreign corporation shall have the right to transact business in Texas until it shall have procured a certificate of authority to do so from the Secretary of State. Tex.Bus.Corp. Act Ann. art. 8.01(A) (Vernon 1980). As an incident of its authorization to do business in Texas, a foreign corporation is required on an annual basis to file financial reports and pay to the Comptroller of Public Accounts a franchise tax for the year past at certain prescribed rates. Tex.Tax.–Gen. Ann. art. 12.01 (Vernon 1969). The sanctions for failure to comply with the franchise tax and reporting provisions are set forth in article 12.14(2) of the Taxation–General statutes as follows:

(2) If the reports required by Articles 12.08, 12.09, and 12.19 be not filed in accordance with the provisions of this Chapter, or if the amount of such tax and penalties be not paid in full on or before September 15 of each year or, when an initial tax report or payment is required, on or before ninety (90) days after the time the initial report and payment is required, such corporation shall for such default forfeit its right to do business in this State; which forfeiture shall be consummated without judicial ascertainment by the Comptroller of Public Accounts. *Any corporation whose right to do business shall be thus forfeited shall be denied the right to sue or defend in any court of this State*, except in a suit to forfeit the charter or certificate of authority of such corporation. In any suit against such corporation on a cause of action arising before such forfeiture, no affirmative relief shall be granted to such corporation unless its right to do business in this State shall be revived as provided in this Chapter." Tex.Tax.–Gen.Ann. art. 12.14(2) (Vernon 1969 & Supp. 1980) (emphasis added)

The Comptroller of Public Accounts is required to give notice to foreign corporations who have failed to file the required reports or pay franchise taxes that, unless the delinquent taxes and penalties are paid or reports submitted, the right of the corporation to do business in Texas will be forfeited without judicial ascertainment. Tex. Tax.–Gen.Ann. art. 12.15 (Vernon 1969 & Supp. 1980). A foreign corporation whose right to do business has been forfeited can be relieved from such forfeiture by paying the past due taxes, penalties and interest prior to the time its certificate of authority is forfeited. *Id.* If the foreign corporation fails to pay the necessary amount to revive its right to do business within 120 days after its forfeiture, such failure is sufficient ground for the forfeiture of the certificate of authority of the foreign corporation, which forfeiture may be accomplished administratively by the Secretary of State, Tex.Tax.–Gen.Ann. art. 12.17 (Vernon 1969), or in judicial proceedings instituted by the Attorney General, Tex.Tax.–Gen. Ann. art. 12.16 (Vernon 1969).

■ Independent of the franchise tax statutes, the Texas Business Corporation Act provides for the revocation of a foreign corporation's certificate of authority either by means of a judicial action brought by the Attorney General, Tex.Bus.Corp.Act Ann. art. 7.02 (Vernon 1980), or by order of the Secretary of State where the corporation has failed to file annual reports or pay franchise taxes when due, Tex.Bus.Corp. Act Ann. art. 8.16 (Vernon 1980). Since the franchise tax statute was adopted at a later date than the date of final passage of the Corporation Act, the franchise tax provisions must be regarded as remaining in effect and applicable to all domestic and foreign corporations, including those securing certificates of authority under the new (1955) Corporation Act. *See* Tex.Bus.Corp. Act Ann. art. 8.16, comment at 553 (Vernon 1980). Forfeiture of certificates of authority under the franchise tax laws and revocation of certificates under the Texas Business Corporation Act are different legal processes that are subject to different judi-

cial treatment. *See* 14 Tex.Jur.2d, *Corporations* § 544 (1960); *McGown v. Kittel*, 480 S.W.2d 47, 50 (Tex.Civ.App.–Fort Worth 1972, writ ref'd n.r.e.); Tex.Att'y Gen. Op.No. M–600 (1970). None of the various provisions of the Texas Business Corporations Act relating to revocation, dissolution and reinstatement of a corporation's certificate of authority have been invoked here, nor have they any application to the disposition of this motion.

### The Facts

As noted above, Defendant Sambo's is a corporation organized and existing under the laws of the State of California. On April 23, 1969, Sambo's was issued a Certificate of Authority to do business in the State of Texas. Pursuant to the statutory procedures outlined above, Sambo's right to do business was forfeited on November 8, 1971, for failure to file a current year franchise tax report from which its tax liability could be determined.· Sambo's was notified of its delinquency by the Comptroller and failed or refused to revive its right to do business within the prescribed times. On February 26, 1973, Sambo's Certificate of Authority to do business in this state was forfeited by determination of the Secretary of State pursuant to article 12.17. To this date, Sambo's Certificate of Authority has not been reinstated.

### Discussion

██ The Texas franchise tax provisions are revenue measures only, and are designed simply to penalize domestic and foreign corporations which accrue tax liability and fail to pay the taxes due or fail to file the required reports. *Real Estate–Land Title & Trust Co. v. Dildy*, 92 S.W.2d 318, 320 (Tex.Civ.App.–Austin 1936, writ ref'd). The only penalty imposed by the statute is to deny the offending corporation the right to prosecute or defend in the courts of the state. *Purcel v. Wells*, 236 F.2d 469 (10th Cir. 1956); *Ross Amigos Oil Co. v. State*, 134 Tex. 626, 138 S.W.2d 798 (1940); *Parkview General Hospital, Inc. v. Waco Construction, Inc.*, 531 S.W.2d 224 (Tex.Civ.App.–Corpus Christi 1975); *Hoover v. Barker*, 507 S.W.2d 299 (Tex.Civ.App.–Austin 1974, writ ref'd n.r.e.); *see also Mobile Homes of America, Inc. v. Easy Living, Inc.*, 527 S.W.2d 847 (Tex.Civ.App.–Fort Worth 1975). A foreign corporation whose certificate of authority has been forfeited does not have the right to use the courts of Texas. So long as Sambo's remains in default of the Texas franchise tax laws, it cannot take any action, in court, in its defense once suit has been commenced against it.

Sambo's attempts to avoid the reach of the disqualification statute by contending that it does not presently do business in Texas, and that it did not at the time of the events surrounding this lawsuit. Sambo's acknowledges that prior to 1973, it operated various Sambo's Restaurants throughout Texas, pursuant to a Certificate of Authority to do business. In 1973, Sambo's established Sambo's Restaurants of Texas, Inc., a Texas corporation ("SRX"), which was a wholly–owned subsidiary of Sambo's, and which thereafter carried on the business of Sambo's with respect to its Texas operations. Since 1973, SRX has filed the required reports and paid its annual franchise taxes to the Comptroller based on the gross receipts of the SRX restaurants from its Texas operations. (Affidavit of Don Ray Hanson at 2). SRX, however, is not a party to this lawsuit.

Without regard to whether Sambo's is presently doing business in Texas and is therefore currently subject to the franchise tax, it is not disputed by the parties, nor in light of the documentary evidence can it be disputed, that between November 8, 1971, and February 26, 1973, Sambo's right to do business was forfeited and has never since been revived.

██ It may have been the design of Sambo's to discontinue its operations in Texas in 1973 in the name of the national corporation and organize SRX to serve in its stead. The proper procedure for this, however, is not to simply fail to file reports and pay accrued franchise taxes and suffer forfeiture of authority to do business by opera-

tion of law. Article 12.04 of the Taxation–General statutes sets forth explicitly the measures whereby a foreign corporation may withdraw from doing business in the state upon filing a certificate of withdrawal with the Secretary of State and paying in full all franchise taxes and penalties owed by the corporation to the State of Texas. Tex.Tax.–Gen.Ann. art. 12.04 (Vernon 1969). In any event, regardless of the avenue chosen by Sambo's to quit the state, Sambo's failed to make a final accounting of its tax liability between 1971 and 1973 and is accordingly denied access to the courts of this state, including this federal court in diversity.

■ Such an application of the laws of Texas does not create an insurmountable burden for Sambo's nor does it visit any injustice upon it. By following the expeditious procedures for reinstatement found at Tex.Tax.–Gen.Ann. art. 12.17(3) (Vernon 1969), Sambo's can revive its certificate, *see McGown v. Kittel*, 480 S.W.2d 47 (Tex.Civ. App.–Fort Worth 1972, writ ref'd n.r.e.), and by appropriate pleadings (*e. g.*, Rule 60(b)) seek relief from this Court.

Plaintiff's Motion to Strike Defendant's Answer and Enter Default Judgment is GRANTED. *Woods v. Interstate Realty Co., supra*; *see also Weinstock v. Sinatra*, 379 F.Supp. 274 (C.D.Cal.1974).

SO ORDERED.