Filed 4/14/15  Crosscreek Golf Club v. ANB Enterprises CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| CROSSCREEK GOLF CLUB, INC., | |
| Cross-complainant and Appellant, | E059730 |
| v. | (Super.Ct.No. RIC10010133) |
| ANB ENTERPRISES, LLC et al., | OPINION |
| Cross-defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Ronald L. Taylor, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Reversed.

Law Offices of Stuart J. Wald and Stuart J. Wald for Cross-complainant and Appellant.

Kushner Carlson, Michael B. Kushner and Robert Paredes for Cross-defendants and Respondents.

1

I

INTRODUCTION

Cross-complainant Crosscreek Golf Club, Inc. (Crosscreek) appeals judgment entered following the trial court granting cross-defendant ANB Enterprises, LLC's (ANB) motion in limine to dismiss Crosscreek's cross-complaint on the ground Crosscreek lacked standing to prosecute its cross-complaint. Crosscreek argues ANB's motion in limine was an improper substitute for a timely dispositive motion. Crosscreek further argues it had standing to prosecute its cross-complaint and, even if it did not, the trial court should have permitted Crosscreek to substitute in a real party in interest, rather than dismiss the cross-complaint.

We conclude that, although the trial court did not abuse its discretion in ruling on ANB's motion in limine to dismiss, the trial court erred in granting the motion and dismissing Crosscreek's cross-complaint on the ground Crosscreek did not have standing to bring its cross-complaint. Even though the cross-complaint was filed shortly after dissolution of Crosscreek as a corporation, under Corporations Code section 2010, subdivision (a),[1] Crosscreek "nevertheless continues to exist for the purpose of winding up its affairs, *prosecuting and defending actions by or against it* and enabling it to collect and discharge obligations, dispose of and convey its property and collect and divide its assets, . . ." (Italics added.)

---

[1] Unless otherwise noted, all statutory references are to the Corporations Code.

Since we conclude Crosscreek has standing to proceed with its postdissolution cross-complaint to recover assets and damages, we need not address Crosscreek's alternative contention that, rather than dismissing the cross-complaint, Crosscreek should have been permitted to substitute in a real party in interest. The judgment of dismissal of Crosscreek's cross-complaint is reversed.

II

FACTS AND PROCEDURAL BACKGROUND

In October 2007, See Myun Kymm and his wife, Ock Ja Kymm (the Kymms), through their family trust (Trust), purchased the Crosscreek Golf Course (the Golf Course). The Kymms financed the purchase by executing and delivering to Hanmi Bank a written promissory note in the principal sum of $7.020 million (Note). The Kymms also executed a deed of trust (DOT) against the Golf Course property, securing the Trust's obligations under the Note. The DOT was recorded on October 31, 2007.

Also in October 2007, the Kymms executed and delivered to Hanmi Bank a business loan agreement and commercial security agreement granting Hanmi Bank a first priority security interest in "'All Inventory, Chattel Paper, Accounts, Equipment and General Intangibles'" of the Golf Course. Hanmi Bank perfected its interest in the Golf Course by filing a Uniform Commercial Code financing statement with the Secretary of State of California.

In April 2009, the Kymms formed the corporation, Crosscreek, to operate the Golf Course.

3

In February 2010, the Trust defaulted on the Note and failed to make any subsequent payments. This led to Hanmi Bank initiating nonjudicial foreclosure by recording in May 2010, a notice of default and election to sell the Golf Course property under the deed of trust.

Also in May 2010, Hanmi Bank filed a complaint against the Kymms and the Trust, for judicial foreclosure on the DOT. In December 2010, Hanmi Bank filed an amended complaint alleging nonpayment of the Note, breach of the Kymms' personal guaranties, foreclosure on the DOT, and various other related claims. Also, Crosscreek was added as a defendant.

In December 2010, the trial court appointed Larry Taylor as receiver for the Golf Course. Taylor seized control over the Golf Course and all assets located on the course. Crosscreek's bank account funds were also seized.

In February 2011, Hanmi Bank assigned to ANB all of its rights relating to the $7.020 million Note and Golf Course DOT.

In March 2011, Crosscreek filed a certificate of dissolution with the California Secretary of State, dissolving Crosscreek's active corporation status.

In May 2011, Crosscreek filed a cross-complaint against Hanmi Bank, ANB, and ANB's principal, Kwang Jin Kil, alleging causes of action for (1) conversion, (2) common counts seeking reasonable value of use of tools and inventory, and (3) restitution for the value of use of the Golf Club's name and licenses. The receiver, Taylor, was later added as a cross-defendant. Crosscreek alleged in its cross-complaint that, after vacating the Golf Course property, Crosscreek retained ownership of non-fixed personal property,

4

including inventory and tools, which cross-defendants took, refused to return, and continue to use. In addition, the current owner and occupants of the Golf Course property continue to use without right Crosscreek's liquor, tobacco, cigarette sales, septic tank, well and windmill licenses and permits. Cross-defendants also took $24,000 from a fund belonging to Crosscreek, which Crosscreek had reserved to pay taxes and liability for taxes, including interest and penalties. Crosscreek further alleged cross-defendants caused the loss of a $17,000 security deposit with Yamaha and Toro Landscape Equipment, and loss of $300,000 in connection with the conversion of leased equipment from PNC. The cross-complaint prayer requested damages for conversion and use of Crosscreek's assets, restitution, and injunctive relief.

At a trial readiness hearing on July 5, 2013, ANB voluntarily dismissed without prejudice its complaint against Crosscreek, the Kymms, and the Trust. The trial court set the cross-complaint for trial. ANB filed motions in limine. In its motion in limine No. 2, ANB requested an order or, alternatively, a judgment on the pleadings dismissing the cross-complaint on the ground Crosscreek did not have standing to litigate its cross-complaint because Crosscreek had filed a certificate of dissolution, dissolving Crosscreek as a corporation.

On July 8, 2013, the day trial on the cross-complaint was scheduled to begin, the trial court granted ANB's motion in limine No. 2 and dismissed Crosscreek's cross-complaint. Thereafter, the trial court entered a judgment of dismissal on the cross-complaint, which stated: "The Cross-Complaint was dismissed pursuant to Corporations Code §2010(a), (b), and (c), as well as the authority cited in ANB Enterprises, LLC's and

Kwang Jin Kil's Motion in Limine #2 To Dismiss Defendant and Cross-Complainant's Cross-Complaint For Lack of Standing, or in the Alternative, Motion for Judgment on the Pleadings."

III

PROPRIETY OF DISPOSITIVE MOTION IN LIMINE

Crosscreek argues ANB's motion in limine requesting dismissal of Crosscreek's cross-complaint was an improper substitute for a timely dispositive motion. Crosscreek notes that it filed for dissolution in March 2011, yet ANB waited until the eve of trial two years later to challenge Crosscreek's standing based on dissolution of Crosscreek. Crosscreek asserts that ANB could have brought a timely motion for summary judgment on the issue of standing, which would have given Crosscreek an opportunity to cure the standing defect by either rescinding corporate liquidation or substituting in See Myun Kymm for Crosscreek.

California Rules of Court, rule 3.1112(f), relating to motions and other pleadings, provides that "a motion in limine filed before or during trial need not be accompanied by a notice of hearing. The timing and place of the filing and service of the motion are at the discretion of the trial judge." (Cal. Rules of Court, rule. 3.1112(f).)

"In limine motions are designed to facilitate the management of a case, generally by deciding difficult evidentiary issues in advance of trial. '"The usual purpose of motions *in limine* is to preclude the presentation of evidence deemed inadmissible and prejudicial by the moving party. A typical order *in limine* excludes the challenged evidence and directs counsel, parties, and witnesses not to refer to the excluded matters

6

during trial. [Citation.] 'The advantage of such motions is to avoid the obviously futile attempt to "unring the bell" in the event a motion to strike is granted in the proceedings before the jury.' [Citation.]"' [Citation.] What in limine motions are *not* designed to do is to replace the dispositive motions prescribed by the Code of Civil Procedure. It has become increasingly common, however, for litigants to utilize in limine motions for this purpose. [¶] These nontraditional in limine motions can result in a court's dismissing a cause on the pleadings. (See e.g., *Coshow v. City of Escondido* (2005) 132 Cal.App.4th 687, 701-702 [trial court construed motions in limine as a motion for judgment on the pleadings and dismissed the action].)" (*Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1593 (*Amtower*).) Some courts have used the in limine process to examine the sufficiency of the evidence and have, in effect, granted a motion in limine as a motion for nonsuit or demurrer to the evidence. (*Id.* at pp. 1593-1594.) The granting of a motion in limine as a dispositive motion is disfavored. (*Id.* at p. 1594.)

"Although trial courts may exercise their inherent powers to permit nontraditional uses of motions in limine [citation],[] when used in such fashion they become substitutes for other motions, such as summary judgment motions, thereby circumventing 'procedural protections provided by the statutory motions or by trial on the merits; they risk blindsiding the nonmoving party; and, in some cases, they could infringe a litigant's right to a jury trial. [Citations.]'" (*Blanks v. Seyfarth Shaw LLP* (2009) 171 Cal.App.4th 336, 375-376; see *Amtower, supra,* 158 Cal.App.4th at p. 1594; *McMillin Companies, LLC v. American Safety Indemnity Company* (2015) 233 Cal.App.4th 518, 529 (*McMillin*); *Coshow v. City of Escondido, supra,* 132 Cal.App.4th at pp. 701-702 [proper

7

exercise of "inherent powers" by construing motions in limine as a motion for judgment on the pleadings]; *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 26-27 [in limine motion may be treated as demurrer, judgment on the pleadings, or nonsuit and address purely legal issue.].)"

By granting ANB's motion to dismiss, the court essentially granted a summary judgment motion or motion for judgment on the pleadings in favor of ANB based on the lack of Crosscreek having standing to sue. For this reason, we review de novo the order granting ANB's motion. Accordingly, as with a motion for summary judgment or judgment on the pleadings, "we must view the evidence most favorably to appellants, resolving all presumptions, inferences and doubts in their favor, and uphold the judgment for respondents only if it was required as a matter of law." (*Edwards v. Centex Real Estate Corp., supra,* 53 Cal.App.4th at p. 28.) We recognize that granting such motions is not favored. (*McMillin, supra,* 233 Cal.App.4th at p. 530.)

Here, Crosscreek asserts ANB's motion in limine to dismiss the cross-complaint was an improper substitute for a timely dispositive motion. We recognize that generally the trial court should not engage in "the wholesale disposition of a case through rulings on motions in limine," particularly when doing so requires the weighing of evidence. (*R & B Auto Center, Inc., v. Farmers Group, Inc.* (2006) 140 Cal.App.4th 327, 333.) In the instant case, however, ANB's motion was brought not only as a motion in limine but also alternatively as a dispositive motion, a motion for judgment on the pleadings. Furthermore, the trial court was not required to weigh the evidence. It was undisputed

Crosscreek had been dissolved as a corporation, and the trial court could find as a matter of law that Crosscreek did not have standing to proceed with its cross-complaint.

As Crosscreek acknowledges in its appellate opening brief, the trial court has the inherent power to dispose of a claim through a motion in limine. Doing so in the instant case was not an abuse of discretion or a violation of Crosscreek's due process rights, regardless of whether ANB's motion was decided as a dispositive motion in limine or a motion for judgment on the pleadings. "Due process is the opportunity to be heard at a meaningful time and in a meaningful manner. [Citation.] Unlike some legal rules, due process '"is not a technical conception with a fixed content unrelated to time, place and circumstance." [Citation.]' [Citation.] Rather, it '"is flexible and calls for such procedural protections as the particular situation demands." [Citation.]'" (*Southern Cal. Underground Contractors, Inc. v. City of San Diego* (2003) 108 Cal.App.4th 533, 543.)

Here, a hearing was conducted on the ANB's motion to dismiss and Crosscreek was provided an adequate opportunity to respond. Although normally a motion for judgment on the pleadings requires at least 30 days notice, the trial court has discretion to permit the motion to be heard on shorter notice, generally upon a showing of good cause. (Code Civ. Proc., § 438, subd. (e).) "'A motion for judgment on the pleadings may be made at any time either prior to the trial or at the trial itself. [Citation.]' [Citation.] Such motion may be made on the same ground as those supporting a general demurrer, i.e., that the pleading at issue fails to state facts sufficient to constitute a legally cognizable claim or defense. [Citation.]" (*Stoops v. Abbassi* (2002) 100 Cal.App.4th 644, 650.) In the instant case, the motion in limine or for judgment on the pleadings was filed on

9

Friday, July 5, 2013, and was heard the following Monday, on the day trial was scheduled to begin. Crosscreek's counsel appeared at the hearing on the motion. There is no indication in the record Crosscreek objected to notice of the motion or requested a continuance, and therefore forfeited any such objection. Crosscreek has not shown the trial court abused its discretion in hearing and ruling on the motion or that Crosscreek's due process rights were violated in any way.

Furthermore, even assuming without deciding ANB's motion in limine to dismiss should not have been brought on the eve of trial as a dispositive motion in limine or motion for judgment on the pleadings but, rather should have been brought earlier as a summary judgment motion, any error in ruling on the dispositive motion in limine was harmless. It is undisputed Crosscreek had been dissolved for two years, and filed its cross-complaint two months after it dissolved. Therefore, had the trial court not granted ANB's motion in limine to dismiss and the matter gone to trial, during the trial, ANB would have succeeded in proving Crosscreek did not have standing to file and proceed with its cross-complaint. As a consequence, it is highly probable the trial court would have dismissed the cross-complaint. Any error in dismissing the cross-complaint by means of a motion in limine, instead of allowing the matter to go to trial, was thus harmless error.

IV

CROSSCREEK'S STANDING AS A DISSOLVED CORPORATION

Crosscreek contends the trial court erred in granting ANB's motion in limine for dismissal on the ground Crosscreek did not have standing to file its cross-complaint.

10

Crosscreek filed its cross-complaint on May 17, 2012, two months after Crosscreek filed a certificate of dissolution with the California Secretary of State, dissolving Crosscreek's active corporation status. Crosscreek argues that, even though it filed its cross-complaint after dissolution, Crosscreek was not precluded from proceeding with its cross-complaint under section 2010.

Here, where the trial court granted ANB's motion in limine to dismiss as, in effect, a dispository motion for judgment on the pleadings, summary judgment, or nonsuit, we review the ruling de novo. (*McMillin, supra,* 233 Cal.App.4th at p. 529.)

"A California corporation may dissolve by following the procedure set forth in the Corporations Code. After it has dissolved, a corporation, although no longer permitted to do business as a going concern, continues to exist for purposes of winding up its affairs and, in particular, for discharging obligations and defending lawsuits." (*Penasquitos, Inc. v. Superior Court* (1991) 53 Cal.3d 1180, 1183 (*Penasquitos*).)

Section 2010 provides in relevant part as follows: "(a) A corporation which is dissolved nevertheless *continues to exist for the purpose of winding up its affairs, prosecuting* and defending actions by or against it and enabling it to collect and discharge obligations, dispose of and convey its property and collect and divide its assets, but not for the purpose of continuing business except so far as necessary for the winding up thereof. [¶] (b) No action or proceeding to which a corporation is a party abates by the dissolution of the corporation or by reason of proceedings for winding up and dissolution thereof. [¶] (c) Any assets inadvertently or otherwise omitted from the winding up continue in the dissolved corporation for the benefit of the persons entitled thereto upon

11

dissolution of the corporation and on realization shall be distributed accordingly."

(Italics added.)

"The board of directors and officers of the dissolved corporation have the authority to act on the corporation's behalf to wind up its affairs.  (See Corp. Code, §§ 1903, subd. (b) ['[w]hen a voluntary proceeding for winding up has commenced, the board shall continue to act as a board and shall have full powers to wind up and settle its affairs, both before and after the filing of the certificate of dissolution"], 2001 ["The powers and duties of the directors . . . and officers after commencement of a dissolution proceeding include, but are not limited to, the following acts in the name and on behalf of the corporation:  [¶]  (a) To elect officers and to employ agents and attorneys to liquidate or wind up its affairs.  [¶] . . . [¶]  (d) To defend suits brought against the corporation.  [¶] (e) To sue, in the name of the corporation, for all sums due or owing to the corporation or to recover any of its property. . . .'].)"  (*Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 213.)

"At common law, the dissolution of a corporation was treated like the death of a natural person:  Once it had dissolved, a corporation ceased to exist and could not sue or be sued, and any actions pending against it abated.  [Citations.]  [¶]  California no longer follows the common law rules with respect to either the death of a natural person or the dissolution of a corporation.  Except as provided by statute, 'no cause of action is lost by reason of the death of any person, but may be maintained by or against the person's personal representative.'  (Prob. Code, § 573.)"  (*Penasquitos, supra,* 53 Cal.3d at p. 1184.)

As explained by our high court in *Penasquitos, supra,* 53 Cal.3d at pages 1184-1185, "California abandoned the common law rule governing the effect of a corporation's dissolution by the enactment of former Civil Code section 399 in 1929.[]  The nature of the change has been described in these terms:  '"The policy was adopted in 1929 of providing for the continuation of the corporate existence indefinitely for the purpose of winding up and settling the affairs of corporations which had been dissolved, rather than extinguishing the corporate existence and giving the administration of the surviving assets and liabilities to trustees. . . .  By these sections provision is made that a corporation after dissolution, voluntary or involuntary, shall nevertheless continue to exist for an indefinite period as a legal entity for the purpose of winding up its affairs."'"  This statutory scheme, enacted in 1929 for the postdissolution survival of corporations, has endured with relatively few changes.  (*Id.* at p. 1185.)

As our high court noted in *Penasquitos*, "[u]nder our statutory scheme, the effect of dissolution is not so much a change in the corporation's status as a change in its permitted scope of activity.  In *Boyle v. Lakeview Creamery Co.* (1937) 9 Cal.2d 16, [20], we stated that the 'only purpose' of former Civil Code section 399, a predecessor of section 2010, was 'to stop further doing of business as a going concern, and limit corporate activities to winding up.'  [Citation.]  Thus, a corporation's dissolution is best understood not as its death, but merely as its retirement from active business."  (*Penasquitos, supra,* 53 Cal.3d at p. 1190.)

Crosscreek argues that it was not precluded from pursuing its cross-claims seeking recovery of its various personal property held by cross-defendants, which Crosscreek

13

claims was not subject to the Hanmi Bank lien. Crosscreek reasons that its cross-complaint fell within the purview of "winding up its affairs, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations, dispose of and convey its property and collect and divide its assets," permissible under section 2010, subdivision (a). Crosscreek also asserts that, since under section 2010, subdivision (b), dissolution of a corporation does not abate any action or proceeding to which the corporation is a party, Crosscreek could bring its cross-complaint because Crosscreek was already a party to the main action at the time of its dissolution.

We agree that Crosscreek had standing to bring its postdissolution cross-complaint, and the cross-complaint should not have been dismissed merely because Crosscreek was a dissolved corporation. Section 2010 permits the assertion of postdissolution claims by and against dissolved corporations. The California Corporations Code permits the corporate existence to continue indefinitely for the purpose of such actions. (§ 2010, subds. (a), (c); *Penasquitos, supra,* 53 Cal.3d at p. 1190.) Under section 2010, a dissolved corporation may continue indefinitely to prosecute and defend suits in furtherance of winding up its affairs, so as to enable the corporation to discharge its obligations, dispose of and convey all of its property, and collect and divide its assets. "If corporate assets are undistributed or discovered after dissolution,[] the winding-up process has not been completed; the interest in finality and repose cannot justify barring a postdissolution claim so long as the corporation holds undistributed assets." (*Penasquitos, supra,* 53 Cal.3d at pp. 1191-1192.)

14

In the instant case, Crosscreek's cross-complaint was not filed in furtherance of continuing its business. When it was filed, Crosscreek had already lost its Golf Course to foreclosure. Crosscreek was therefore no longer able to conduct its Golf Course business, and Crosscreek's assets had been seized by Hanmi Bank through the receiver, Taylor. Crosscreek was obligated to liquidate its assets and distribute them to its creditors, before distributing the remaining assets, if any, to Crosscreek's shareholders, the Kymms. Crosscreek's cross-complaint was filed for the purpose of recovering from Hanmi Bank, ANB, and Taylor, assets Crosscreek believed Hanmi Bank and Taylor had wrongfully taken during the process of foreclosing on the Golf Course property under the Golf Course DOT. The cross-complaint provided a means of protecting and recovering Crosscreek's remaining, undistributed assets, which Crosscreek alleges should not have been seized by Hanmi Bank and Taylor. This litigation was a necessary part of collecting and distributing Crosscreek's property to those entitled to Crosscreek's assets as a result of Crosscreek's dissolution.

Judicial resolution of Crosscreek's cross-complaint is part of the winding-up process for which section 2010 expressly allows the dissolved corporation's existence to continue. The trial court's dismissal of Crosscreek's postdissolution cross-complaint on the ground Crosscreek was a dissolved corporation, is inconsistent with the language and purpose of section 2010 and *Penasquitos, supra,* 53 Cal.3d 1180, which allows a dissolved corporation to prosecute and defend actions involving the corporation's remaining property.

15

V

DISPOSITION

The judgment of dismissal of Crosscreek's cross-complaint is reversed.

Crosscreek is entitled to its costs on appeal as the prevailing party.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


HOLLENHORST
Acting P. J.


MILLER
J.

16